GAITHER N. BOBBITT v. JUNIUS L. HAYNES, JR., JUNIUS L. HAYNES, SR., AND HAYNES MOTOR COMPANY.

(Filed 3 February, 1950.)

**1. Automobiles § 12a—**

The statutory speed limit of 55 miles per hour on a highway does not relieve the driver of a vehicle from the duty of not exceeding a speed which is reasonable and prudent under the conditions existent or the duty to decrease speed when approaching an intersection or when hazards exist with respect to pedestrians, traffic or weather conditions, or the duty to observe special limitations on speed duly promulgated by the State Highway Commission or local authorities when appropriate signs giving notice thereof are duly erected. G.S. 20-141 (a) (b) (c) (d) (f).

**2. Same—**

Even in the absence of statutory requirements, the operator of a motor vehicle is under duty to exercise ordinary prudence, to keep the vehicle under control and to keep a reasonably careful lookout so as to avoid colliding with persons and vehicles whose presence can be reasonably anticipated.

**3. Automobiles § 8i—**

G.S. 20-156 (a) providing that the driver of a vehicle entering a public highway from a private road shall yield the right of way to vehicles approaching on such highway does not apply to a motorist entering such highway from a public street.

**4. Same—**

The failure to observe a stop sign duly erected by the State Highway Commission before entering an intersection with a dominant highway is not negligence *per se* but is merely to be considered with other evidence in the case upon the question. G.S. 20-158.

**5. Same**

A person entering upon an intersection with a State highway has the right to assume that a motorist traveling upon such highway will observe special speed restrictions lawfully promulgated by the State Highway Commission or local authorities of which notice is given by duly erected signs upon the highway.

**6. Automobiles § 8a—**

The operator of a motor vehicle is not under duty to anticipate negligence on the part of others but may assume that other operators will use reasonable care and caution commensurate with visible conditions, and that they will approach with their vehicles under reasonable control, and that they will observe and obey the rules of the road.

**7. Automobiles § 18h (3)—Evidence held insufficient to show contributory negligence as a matter of law on part of motorist entering intersection with State highway.**

The evidence tended to show that plaintiff, traveling on a dirt road, approached an intersection with a State highway, and stopped before entering upon the intersection, that the intersection was within the corporate limits of a municipality, that defendant, traveling along the highway and approaching from plaintiff's right, passed a corporate limits sign stating a speed limit of 25 miles per hour, entered the intersection at 55 miles per hour, and struck plaintiff's car just as its front wheels had cleared the hard surface. The evidence was conflicting as to whether plaintiff undertook to cross the highway after seeing defendant's car approaching or whether plaintiff first saw defendant's car when in the act of crossing the intersection. *Held:* Nonsuit on the ground of contributory negligence was properly denied.

APPEAL by defendant Junius L. Haynes, Jr., from *Harris, J.,* at September Civil Term, 1949, of DURHAM.

Civil action for recovery of damages to plaintiff's automobile allegedly resulting from actionable negligence of defendant Junius L. Haynes, Jr.

Motions for judgment as of nonsuit entered by all defendants at close of plaintiff's evidence having been allowed as to all except Junius L. Haynes, Jr., and he alone having appealed, the case is stated only as it relates to him—as the defendant.

The action grows out of a collision of automobiles at the intersection of U. S. Highway No. 70 and Liberty Street inside, and near the eastern corporate limits of the city of Durham. It occurred about 4:30 o'clock p.m. on 24 September, 1947. Plaintiff's automobile, operated by him,

was traveling east on Liberty Street, and the automobile operated by defendant was traveling north on U. S. Highway No. 70.

Plaintiff alleges in his complaint, summarily stated, that the collision was proximately caused by the negligence of defendant in that he was operating his automobile "at a high, dangerous and unlawful rate of speed, to wit, in excess of 55 miles per hour," and without keeping a proper lookout, or giving warning of his approach, or due regard to the traffic then on the highway, "in violation of Chapter 20 of the General Statutes of North Carolina, 1943, and amendments thereto."

Defendant, answering, denies that he was negligent in any respect alleged in the complaint, and for further answer and defense avers: That at the time and upon the occasion complained of the plaintiff was entering Highway No. 70 from Liberty Street; that there is a "Stop" sign on Liberty Street warning vehicles entering said highway from said street to come to a full stop before doing so; that plaintiff failed and neglected to stop at said "Stop" sign, and negligently, carelessly and recklessly dashed out into Highway No. 70 in front of the automobile being operated by defendant, and that such negligence on the part of plaintiff contributed to and was the proximate cause of the injuries complained of, and such contributory negligence is pleaded in bar of any recovery in this action.

And the evidence offered by plaintiff, on the trial in Superior Court, tends to show this factual situation at the scene, and time of the collision: U. S. Highway No. 70, running from Raleigh to Durham, intersects Liberty Street about 165 to 170 feet inside the corporate limits of the city of Durham. The highway runs in a general northerly-southerly direction, and Liberty Street approximately east-west. The highway is 28 feet, maybe 22 feet wide, and is paved,—"a good two-lane traffic." Liberty Street is not paved, but is of dirt surface. Approaching the intersection from south, the direction of Raleigh, the highway is down-grade, and from the west Liberty Street is on a slight incline. The street is more level than the highway. On the east side of the highway there is a "City Limits" sign, with the word "Durham" on it, underneath which are these words and figures, "Speed Limit 25 MPH." On the south side of Liberty Street there is a "Stop" sign approximately 48 feet from the west edge of the highway. The top of the hill on the highway south is about 300 or 400 feet from the intersection or place of collision. A police officer testified that standing on the west edge of the highway at the place of collision, he could first see the bumper of a car coming from Raleigh about 300 feet away; that the top of the hill would be 300 or 400 feet from the place of collision; that he saw no obstruction there that would keep plaintiff from seeing to the top of the hill after he stopped at the "Stop" sign on Liberty Street at the edge of the highway, and that

likewise defendant could see in the direction he was going, that is, that plaintiff and defendant could see each other.

Plaintiff, as witness for himself, testified: That about 4:30 o'clock on the afternoon alleged he stopped at the "Stop" sign on Liberty Street before undertaking to cross Highway No. 70; "that at the time he stopped he was five or six feet from the edge of the paved highway; that he saw an automobile coming from the north or from the direction of Durham, traveling toward Raleigh; that he let that car go past; that as it went by, he looked and saw another automobile coming from Raleigh; that 'I started then on over and after I had got on the concrete I seen an automobile coming from the direction of Raleigh'; that when he saw it, it was somewhere near the City sign, right close to it; that he was familiar with the sign and knew it was a city limits sign and under it was a speed limit sign indicating that the speed within the city limits was 25 miles per hour; that his car was in low gear; . . . that at the time of the impact his front wheels had gone off the hard surface and onto the dirt"; that after the collision his car was on the east side of the highway; and that he heard defendant tell one of the officers "that he was making 55." And on cross-examination plaintiff further testified substantially in repetition of what he had said on direct examination, and . . . that there was nothing to keep him from seeing to the top of the hill in the direction of Raleigh; that he looked in that direction before crossing the highway and could see to the top of the hill; and that when he saw defendant's automobile it was 50 or 75 steps away,—"after he had done got up on the highway."

The police officer, as witness for plaintiff, further testified that he talked to both the plaintiff and the defendant in the presence of each other, and that defendant said that at the time of the collision he was going about 55 miles an hour; and that plaintiff said he was going around ten miles an hour and looked up and saw a car coming at a high rate of speed about the city limits sign, and he speeded up, and might have picked up two or three miles faster before the impact; that he was in low gear. And the officer further testified that marks on plaintiff's car indicated it had been hit on the right side, and the marks on the road, sideways, showed that plaintiff's front wheels were about six inches beyond the edge of the highway at the time of the impact; that the car traveling north, after the impact, was turned around, and that it had been raining and the highway was wet.

Plaintiff also alleged in his complaint that a part of U. S. Highway No. 70 immediately east of the corporate limits of the city of Durham, as well as inside of said corporate limits, ran and runs through a very densely populated section and was constantly used by vehicles and pedestrians both day and night, which was known to defendant, or could have

been known to him in the exercise of ordinary care, and defendant admits the paragraph of the complaint in which the above allegation is made, and the admission is in evidence.

Defendant introduced no evidence.

Motion of defendant for judgment as in case of nonsuit at the close of all the evidence was denied. Defendant excepted.

The case was submitted to the jury on issues as to (1) negligence of defendant, (2) contributory negligence of plaintiff, and (3) damages. The jury, in verdict rendered, answered the first issue "Yes," the second "No," and the third "$900.00."

Defendant appeals to Supreme Court and assigns error.

*R. M. Gantt for plaintiff, appellee.*
*Fuller, Reade, Umstead & Fuller for defendant, appellant.*

WINBORNE, J. The sole question presented for consideration on this appeal is predicated upon assignments of error based on exceptions to the refusal of the court below to allow defendant's motion for judgment as of nonsuit first entered at the close of plaintiff's evidence, and renewed at the close of all the evidence in the case.

It is the contention of defendant that the evidence introduced by plaintiff, and shown in the record, taken in the light most favorable to him, and giving to him the benefit of every reasonable intendment and inference to be drawn therefrom, shows him to be guilty of contributory negligence as a matter of law,—and, hence, that judgment as of nonsuit on this ground should have been granted. However, when tested by pertinent statutes of this State, and decisions of this Court, the evidence is not so clear in meaning as to warrant such holding.

In this connection it is appropriate to consider the legal rights of the respective parties at the time of and under the circumstances of the collision. It is noted that while there is allegation in the complaint that U. S. Highway No. 70, immediately east of, as well as within the corporate limits, "runs through a very thickly populated section," it is not alleged that the approach to the scene of the collision along the highway from the east was in a "business district" as defined in Motor Vehicle Act, G.S. 20-38 (a), or in a "residential district" as defined in Section G.S. 20-38 (w) 1 of said act. Thus the speed restrictions prescribed by statute, G.S. 20-141, as rewritten in Part IV, Section 17 of Chapter 1067 of 1947 Session Laws of North Carolina, effective from and after 1 July, 1947, prior to the date of the collision in question, are pertinent to be considered in judging the conduct of plaintiff. It is provided that "(a) no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing"; and that

"(b) except as otherwise provided in this chapter, it shall be unlawful to operate a vehicle in excess of" a speed of fifty-five miles per hour in places other than those in business and residential districts, for passenger cars, etc.

And it is provided in subsection (c) that the fact that the speed of a vehicle is lower than the foregoing limit shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty to use due care.

Moreover, it is provided in subsection (d) of this statute that whenever the State Highway and Public Works Commission shall determine upon the basis of an engineering and traffic investigation that any speed hereinbefore set forth be greater than is reasonable or safe under the conditions found to exist at any intersection or other place or upon any part of a highway, said commission shall determine and declare a reasonable and safe speed limit thereof, which shall be effective when appropriate signs giving notice thereof are erected at such intersection or other place or part of the highway. And in subsection (f) the local authorities within their respective jurisdictions are given like powers.

Furthermore, it is a general rule of law, even in the absence of statutory requirements, that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinary prudent person would exercise under similar circumstances. In the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highways. This duty requires that the operator be reasonably vigilant, and that he must anticipate and expect the presence of others. And, as between operators so using the highway, the duty of care is mutual, and each may assume that others on the highway will comply with this obligation. 5 Am. Jur. Automobiles, Sections 165, 166, 167. *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326; *Reeves v. Staley,* 220 N.C. 573, 18 S.E. 2d 239; *Tarrant v. Bottling Co.,* 221 N.C. 390, 20 S.E. 2d 565.

And it is not contended on this appeal that there is insufficient evidence to support a finding by the jury that defendant was negligent in the manner alleged.

Now, as to the alleged contributory negligence of plaintiff: While it is averred in the answer that there was a "Stop" sign on Liberty Street warning vehicles entering Highway No. 70 from Liberty Street to come to a full stop before doing so, there is neither allegation nor proof that

such sign was so placed by, or with the sanction of local authorities. Who then had the right of way?

The statute G.S. 20-155 (a) provides that "when two vehicles approach or enter an intersection . . . at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right, except as otherwise provided in G.S. 20-156." And G.S. 20-156 (a) provides that "the driver of a vehicle entering a public highway from a private road or drive shall yield the right of way to all vehicles approaching on such public highway." Hence, as the plaintiff in the present case was traveling on a public street, the provisions of G.S. 20-156 (a) are inapplicable. (Compare *Ingram v. Smoky Mountain Stages, Inc.,* 225 N.C. 444, 35 S.E. 2d 337.) And the evidence most favorable to plaintiff tends to show that his automobile was in the intersection when defendant's automobile was 50 to 75 steps away. So, if the highway and the street were of equal dignity, the provisions of G.S. 20-155 (a) would not apply as the two automobiles were not approaching or entering the intersection at the same time.

On the other hand, it is provided by statute, G.S. 20-158 (a), that "the state highway and public works commission, with reference to state highways, and local authorities, with reference to highways under their jurisdiction, are authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to full stops before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto." And this statute further provides that "no failure so to stop, however, shall be considered contributory negligence *per se* in any action at law for injury to person or property; but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether the plaintiff in such action was guilty of contributory negligence." See *Reeves v. Staley, supra.*

In the light of the provisions of this statute, G.S. 20-158 (a), if the evidence offered as to the city limits sign, with speed limit on it, on the highway, and the "Stop" sign on Liberty Street be sufficient to justify the inference that they were erected with legal authority within the purview of this statute so as to designate U. S. Highway No. 70 as the main or through highway, or to limit the speed of motor vehicles traveling on the highway approaching the intersection in question, all the evidence tends to show that plaintiff brought his automobile to a full stop before entering or attempting to cross said highway. And in entering and attempting to cross, he had the right to take into consideration the speed limit shown on the city limits sign. For "one is not under a duty of anticipating negligence on the part of others, but in the absence of any-

thing which gives or should give notice to the contrary, a person is entitled to assume, and to act upon the assumption, that others will exercise ordinary care for their own safety." 45 C.J. 705, *Shirley v. Ayers,* 201 N.C. 51, 158 S.E. 840. See also *Murray v. R. R., supra; Reeves v. Staley, supra; Hobbs v. Coach Co.,* 225 N.C. 323, 34 S.E. 2d 211; *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246.

Indeed, the operator of a motor vehicle on a public highway may assume that other operators of motor vehicles will use reasonable care and caution commensurate with visible conditions, and that they will approach with their vehicles under reasonable control, and that they will observe and obey the rules of the road. See *Hobbs v. Coach Co., supra; Shirley v. Ayers, supra,* and *Murray v. R. R., supra,* where the authorities are cited.

But if plaintiff had not so stopped, his failure so to do would not have been contributory negligence *per se* in this action at law for injury to property. The facts relating to such failure to stop, might under the express provisions of the statute, be considered with other facts in the case in determining whether plaintiff was guilty of contributory negligence.

Thus, plaintiff is entitled to have his conduct, in entering and undertaking to cross the highway, under the circumstances the evidence tends to show, judged in the light of the provisions of the above statutes and principles declared and applied in decisions of this Court, in determining whether he acted as a reasonably prudent man would have so acted under the same or similar circumstances, that is, with ordinary care.

And the evidence is not clear as to whether plaintiff saw defendant's automobile coming, and then undertook to cross the highway, or whether plaintiff started across, and, when in the act of crossing, saw defendant's automobile. And the evidence is not clear as to whether in law the highway and the street were roads of equal dignity; or whether the highway was in law the dominant road.

In this case the facts as to these matters are determinable by the jury under appropriate instructions from the court as to the law involved.

In the judgment below, we find

No error.