H. L. HAWES v. ATLANTIC REFINING COMPANY AND THOMAS Q. GORDON.

(Filed 6 January, 1953.)

**1. Trial § 22a—**

On motion to nonsuit, the evidence will be considered in the light most favorable to plaintiff, giving him the benefit of every reasonable intendment and inference to be drawn therefrom.

**2. Automobiles § 8a—**

The operators of motor vehicles must exercise the care that an ordinarily prudent man would exercise under like circumstances, which includes the duty to keep his vehicle under control, to keep a reasonably careful lookout, and to anticipate the presence of others on the highway, which duties are mutual and each may assume that others on the highway will comply therewith.

**3. Same—**

The driver of a car is not under duty to anticipate negligence on the part of others, but is entitled to assume and act on the assumption that others will obey the law of the road and exercise due care for their own safety.

**4. Automobiles § 8i—**

The failure of a driver along a servient highway to stop before entering an intersection with a dominant highway is not contributory negligence *per se*, but is to be considered with other facts in evidence in determining the issue. G.S. 20-158 (a).

**5. Same—**

A driver of a vehicle along a dominant highway is not under duty to anticipate that a driver along the servient highway will fail to stop as required by statute before entering the intersection, and in the absence of anything which gives or should give notice to the contrary, may assume and act on the assumption, even to the last moment, that the operator along the servient highway will stop in obedience to the statute.

**6. Same—**

While the driver of an automobile along a servient highway is required to stop before entering an intersection with a through highway and must yield the right of way to vehicles along the dominant highway, and may not enter the intersection until he ascertains, in the exercise of due care, that he can do so with reasonable assurance of safety, he is not required to anticipate that a driver along the dominant highway will travel at excessive speed or fail to observe the rules of the road applicable to him. G.S. 20-141 (a) (b) (c).

**7. Automobiles § 18h (2)—Evidence held for jury on issue of negligence of driver on dominant highway in approaching intersection at excessive speed.**

Plaintiff's evidence tending to show that he was driving along a servient highway in a heavy rain, stopped before entering an intersection with a dominant highway, looked in both directions, and seeing no vehicles approaching, started across the intersection in low gear, and that his car was struck on its left door by defendant's car which approached from his left at excessive speed, "balling the jack" along the dominant highway, *is held* sufficient to take the issue of negligence to the jury notwithstanding defendant's evidence in contradiction, it being a permissive inference from the evidence that at the respective speeds of the vehicles the defendant's automobile could have come from beyond the range of vision of one stopping at the intersection, and therefore was not in view when plaintiff started across the intersection.

**8. Evidence § 30a—**

Photographs of the scene, when properly identified as accurate, are competent for the restricted purpose of explaining or illustrating the testimony of witnesses, but are not substantive proof.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Morris, J.*, at May-June Term, 1952, of NEW HANOVER.

Civil action to recover for personal injuries, and damage to personal property, allegedly resulting from actionable negligence of defendants.

This action arises out of a collision at the intersection of Central and Burnett Boulevards in the City of Wilmington, North Carolina, between an automobile owned by plaintiff H. L. Hawes, operated by him, and in which his wife, Irene Hawes, was riding,—proceeding in a westerly direction on Central Boulevard, a designated servient highway of two lanes with plaza between them, and an automobile owned by defendant, Atlantic Refining Company, and operated by its servant, agent and employee, the defendant, Thomas Q. Gordon, in due course of his employment, proceeding in northerly direction on Burnett Boulevard, a designated dominant highway. The collision occurred about 11 o'clock on the morning of a rainy day.

Plaintiff alleges in his complaint, briefly stated, that the collision was the result of actionable negligence of defendant Thomas Q. Gordon in driving defendant's automobile into the intersection and colliding with the left side of plaintiff's automobile when it had already entered and was in process of traversing said intersection.

The specific acts of negligence alleged are these: That Thomas Q. Gordon operated his automobile (a) without regard to the safety of persons traveling upon the streets and without keeping a proper lookout for persons and vehicular traffic upon said streets; (b) carelessly and heedlessly; (c) at a speed that was unreasonable, imprudent and unlawful; (d) in such manner as to be incapable of stopping within a reasonable distance, because of inadequate and defective brakes; and (e) without decreasing the unlawful speed of his automobile upon approaching said intersection, in compliance with traffic laws of the State of North Carolina.

The defendants, answering, deny in material aspect the allegations of the complaint, and for further answer and defense, and as a bar to any recovery by plaintiff against them, aver that the collision was the direct result of, and was solely and proximately caused by the negligence of plaintiff, H. L. Hawes, in that, briefly stated, he failed (1) to observe the stop sign on Central Boulevard and to stop before entering intersection of Central and Burnett Boulevards; (2) to give the right of way to defendant's automobile; (3) to keep a proper lookout; and (4) to exercise due caution under the circumstances and conditions then and there existing. And they aver that his negligence was at least a contributing cause of the collision and consequent injury and damage of which complaint is made.

Further, as counterclaims and for affirmative relief, defendant Thomas Q. Gordon avers that he sustained personal injury, and defendant Atlantic Refining Company avers that its automobile was damaged by the actionable negligence of plaintiff H. L. Hawes in the manner stated.

And defendants pray judgment in accordance with the averments of their answer.

Plaintiff, replying, denies the averments of the defendants as above related.

Upon trial in Superior Court plaintiff H. L. Hawes testified in pertinent part: "I was driving my automobile on or about March 19, 1951 . . . My wife was the only passenger in the car at the time of the accident. I was going west on Central Boulevard toward the river. When I got to the intersection of Burnett Boulevard and Central Boulevard, I drove up to the stop sign and stopped and I didn't see anybody coming. I looked both ways, then I started across in low gear, and when I got about half-way, Mr. Gordon came along and hit me right in the middle. The left side of my car at the door was struck. The front end of the Refining Company's car was damaged . . . I brought my car to a complete stop prior to attempting to cross Burnett Boulevard. After I had stopped, I looked to the south to my left, and I could see . . . half a block. At the time I started off in low gear, I did not see Mr. Gordon; I didn't see him until he hit me. I was about the white line in the center of the highway when he struck me.

"On this day it was raining hard. I had my parking lights on. It was dark some when it rained . . . it was about 11 o'clock in the daytime. I had my windshield wipers on . . . My car traveled about 20 feet after the impact. It knocked my wife out of the car on the pavement. I was injured . . . My automobile was damaged . . ."

Then on cross-examination, Hawes continued: "I am familiar with the intersection where the accident occurred. I have been on that street before, a lot of times . . . I was familiar with the fact there was a stop sign there . . . and knew the stop sign required me to stop . . . I would say I was about five feet from the edge of the pavement of Burnett Boulevard when I stopped. From that point I could look south and see about half a block. I saw a good piece, you know about how much a half block is, it's 100 yards . . . I looked again south and did not see anybody . . . I know I stopped 4 or 5 feet from the edge of the pavement . . . I would say I stopped thirty or forty seconds at the edge of Burnett Boulevard before I started up. I got half-way into Burnett Boulevard before I was struck, I would say 10 feet or a little more . . . As to obstructions to my view looking to the south, when I stopped there were some hedges way up there about 50 feet that you could not see all the way down that road. I could see half a block . . ."

And Mrs. Irene Hawes, as witness for plaintiff, testified in pertinent part: "My husband . . . owned a 1949 two-door . . . automobile. I was riding in that automobile on March 19, 1951. My husband was driving it. I was just sitting on his right-hand side . . . I had nothing to do with the operation of it. As I approached the intersection of Burnett Boulevard on that date . . . around 11 o'clock . . . nobody else was

in my husband's automobile at that particular time . . . in the morning. It was raining. It had been raining pretty hard. The windshield wipers on my husband's car were working . . . We were headed west . . . I remember well whether or not my husband stopped before entering Burnett Boulevard. He pulled up as close as he could get without going in Burnett Boulevard and stopped. That would be the eastern line of Burnett Boulevard. He looked both ways after he stopped and then put the car in low gear and proceeded on across. I would say he was going about five miles an hour. He got in the middle of Burnett Boulevard . . . After he got to the middle, I saw Mr. Gordon bearing down on us, coming at a high rate of speed, and before I could say 'look out,' he had hit us. We were in the intersection at the time. Mr. Gordon's car was just before entering the intersection when I saw it. He was traveling 50 or 55 miles per hour, I would say . . . The front of Mr. Gordon's car struck the left side of our car about middleway . . . and he ran into us."

Then on cross-examination, Mrs. Hawes continued: ". . . I do not own any interest in that automobile. Title was in my husband's name. I did not pay any part of the purchase price . . . I knew Burnett Boulevard was a through street, and knew it was my husband's duty to stop at the intersection before entering Burnett Boulevard. He did stop. I am positive of that . . . his car . . . was straddle the center line at the time of the impact . . . I looked both ways when he stopped. I didn't see any car coming either way . . . I remember looking well. When I first saw Mr. Gordon's car, he was . . . I would say 35 feet or more from the point I was in my husband's car. At the time . . . my husband had driven out into the intersection of Burnett Boulevard . . . almost to the center . . . fixing to cross the center . . . I didn't see Mr. Gordon's car prior to that time . . . it was almost immediately at the time of the impact. It just happened that quick. In fact, he was 'balling the jack.' He was coming so fast, and it was raining too, and just time I saw him I said, 'look out,' and about that time he hit us."

And on re-direct examination, Mrs. Hawes concluded by saying: "Mr. Gordon was not on his right-hand side of the street, but running down the middle of the road. If he had been on his right-hand side I think we could have made it and not been hit."

On the other hand, defendants, reserving exception to the denial of their respective motions for judgment as of nonsuit, made when plaintiff first rested his case, offered evidence sharply in conflict with that offered by plaintiff, and tending to wholly exculpate them of negligence in connection with the collision.

Motions of defendants, respectively, renewed at the close of all the evidence, for judgment as of nonsuit, were denied, and each excepted.

The case was submitted to the jury upon these issues, which the jury answered as shown:

"1. Was the plaintiff injured by the negligence of the defendants? Answer: Yes.

"2. Did the plaintiff by his own negligence contribute to his injury? Answer: No.

"3. What amount of damages, if any, is the plaintiff entitled to recover of the defendants? Answer: $1500.00.

"4. Was the defendant Thomas Q. Gordon injured by the negligence of the plaintiff? Answer: No.

"5. If so, what amount of damages is the defendant Thomas Q. Gordon entitled to recover on his counterclaim? Answer:

"6. Was the automobile of the defendant Atlantic Refining Company damaged by the negligence of the plaintiff? Answer:

"7. If so, what amount of damages, if any, is the defendant Atlantic Refining Company entitled to recover of the plaintiff on its counterclaim? Answer:    "

From judgment in accordance therewith defendants appeal to Supreme Court and assign error.

*Poisson, Campbell & Marshall and Elbert A. Brown for plaintiff, appellee.*

*James & James for defendants, appellants.*

Winborne, J. Appellants present for decision on this appeal two questions: (1) Did the trial court err: (1) In overruling defendants' motions aptly made for judgments as of nonsuit under G.S. 1-183? (2) In charging the jury in the respects covered by exceptions thereto?

As to the first question: Appellants, the defendants, contend, in their brief, that nonsuit should have been allowed for that plaintiff was not only negligent, but that his negligence was the sole proximate cause of the collision and such resulting injury and damage as he may have sustained. But taking the evidence shown in the case on appeal, in the light most favorable to plaintiff, and giving to him the benefit of every reasonable intendment and inference to be drawn therefrom, tested by pertinent statutes of this State, and decisions of this Court, we hold that the evidence is not so clear in meaning as to sustain defendants' contention.

In this connection it is appropriate to consider the legal rights and obligations of the respective parties at the time, and under the circumstances of the collision here involved.

The speed statute, G.S. 20-141, as rewritten in Section 17, Chapter 1067 of 1947 Session Laws of North Carolina, in so far as pertinent to case in

hand, declares: "(a) No person shall drive a vehicle on a highway at a
speed greater than is reasonable and prudent under the conditions then
existing:

"(b) Except as otherwise provided in this Chapter, it shall be unlaw-
ful to operate a vehicle in excess of the following speeds:

"1. Twenty miles per hour in any business district;

"2. Thirty-five miles per hour in any residential district;

"3. . . .

"4. Fifty-five miles per hour in places other than those named in para-
graphs 1 and 2 of this subsection for passenger cars . . .

"(c) The fact that the speed of a vehicle is lower than the foregoing
limits shall not relieve the driver from the duty to decrease speed when
approaching and crossing an intersection . . . or when special hazard
exists with respect to . . . other traffic or by reason of weather or high-
way conditions, and speed shall be decreased as may be necessary to avoid
colliding with any person, vehicle, or other conveyance on or entering the
highway in compliance with legal requirements or the duty of all persons
to use due care."

And this statute also provides in Subsection (e) that: "The foregoing
provisions of this section shall not be construed to relieve the plaintiff in
any civil action from the burden of proving negligence upon the part of
the defendant as the proximate cause of an accident."

And it is a general rule of law, even in the absence of statutory require-
ment, that the operator of a motor vehicle must exercise ordinary care,
that is, that degree of care which an ordinarily prudent person would
exercise under similar circumstances. In the exercise of such duty it is
incumbent upon the operator of a motor vehicle to keep same under con-
trol, and to keep a reasonably careful lookout, so as to avoid collision with
persons and vehicles upon the highway. This duty requires that the
operator be reasonably vigilant, and that he must anticipate and expect
the presence of others. And, as between operators so using a highway, the
duty of care is mutual, and each may assume that others on the highway
will comply with this obligation. 5 Am. Jur., Automobiles, Sections 165,
166, 167. *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326; *Reeves v.
Staley,* 220 N.C. 573, 18 S.E. 2d 239; *Tarrant v. Bottling Co.,* 221 N.C.
390, 20 S.E. 2d 565; *Hobbs v. Coach Co.,* 225 N.C. 323, 34 S.E. 2d 211;
*Cox v. Lee,* 230 N.C. 155, 52 S.E. 2d 355; *Bobbitt v. Haynes,* 231 N.C.
373, 57 S.E. 2d 361.

Furthermore, "one is not under a duty of anticipating negligence on
the part of others, but in the absence of anything which gives or should
give notice to the contrary, a person is entitled to assume, and to act upon
the assumption that others will exercise care for their own safety." 45
C.J. 705. *Hobbs v. Coach Co., supra; Bobbitt v. Haynes, supra,* and
cases there cited.

Moreover, the statute, G.S. 20-158 (a), prescribes that the State Highway and Public Works Commission, with reference to State highways, and local authorities, with reference to highways under their jurisdiction, are authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers to come to full stop before entering or crossing such designated highway, and that wherever any such signs have been so erected, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. And the same section, G.S. 20-158 (a), also declares that "no failure so to stop, however, shall be considered contributory negligence *per se* in any action at law for injury to person or property; but the facts relating to such failure to stop may be considered with other facts in the case in determining whether the plaintiff in such action was guilty of contributory negligence." See *Sebastian v. Motor Lines,* 213 N.C. 770, 197 S.E. 539; *Reeves v. Staley, supra; Hill v. Lopez,* 228 N.C. 433, 45 S.E. 2d 539; *Nichols v. Goldston,* 228 N.C. 514, 46 S.E. 2d 320; *Lee v. Chemical Corp.,* 229 N.C. 447, 50 S.E. 2d 181; *Bobbitt v. Haynes, supra; Johnson v. Bell,* 234 N.C. 522, 67 S.E. 2d 658.

Indeed, the operator of an automobile, traveling upon a designated main traveled or through highway and approaching an intersecting highway, is under no duty to anticipate that the operator of an automobile approching on such intersecting highway will fail to stop as required by the statute, and, in the absence of anything which gives or should give notice to the contrary, he will be entitled to assume and to act upon the assumption, even to the last moment, that the operator of the automobile on the intersecting highway will act in obedience to the statute, and stop before·entering such designated highway. *Reeves v. Staley, supra; Johnson v. Bell, supra.*

On the other hand, the operator of an automobile traveling upon such intersecting highway and traversing a designated main traveled or through highway, is under no duty to anticipate that the operator of an automobile, upon such designated highway, approaching the intersection of the two highways, will fail to observe the speed regulations, and the rules of the road, and, in the absence of anything which gives or should give notice to the contrary, he is entitled to assume and to act upon the assumption that the operator of the automobile on such designated highway will act in obedience to such regulations and the rules of the road.

And in this connection in *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d 361, in opinion by *Justice Devin,* now *Chief Justice,* it is said: "Generally when the driver of an automobile is required to stop at an intersection he must yield the right of way to an automobile approaching on the intersecting highway . . . and unless the approaching automobile is far enough away to afford reasonable ground for the belief that he can

cross in safety he must delay his progress until the other vehicle has passed." See also *Cooley v. Baker,* 231 N.C. 533, 58 S.E. 2d 115; *S. v. Hill,* 233 N.C. 61, 62 S.E. 2d 532.

In the light of these statutes, and principles of law, applied to the evidence in hand, controverted questions arise: Did plaintiff come to a full stop before entering or attempting to cross such designated highway? If so, did he, before entering such highway, in the exercise of due care determine that he could do so with reasonable assurance of safety? Plaintiff's evidence is that he did stop; that he did so at a point from which he could see up and down, north and south, along the designated highway; that the view to the south was for a distance of half a block—100 yards; that no vehicle was in sight; that then he proceeded with his automobile in low gear at speed of five miles per hour, and was struck amidship after traveling ten feet or a little more; and that defendant's car approached at speed of 50 to 55 miles per hour,—"balling the jack" in opinion of Mrs. Hawes.

"Ball the jack," as defined in Wentworth's American Dialect Dictionary, p. 41, means "To move swiftly," as "the car certainly did ball the jack." And Berry and Van den Bark's "The American Thesaurus of Slang," a "dictionary of unconventional speech," says that "Ball the jack" is used in relation to motion, travel and transportation to indicate "swiftness, speed—drive fast." See the Index p. 857. At any rate, as used by Mrs. Hawes, it may be inferred that the phrase is the antithesis of careful and prudent operation of an automobile under the conditions then existing and of decrease in speed within the meaning of the statute, G.S. 20-141, as rewritten, *supra,* duties which plaintiff had the right to assume the operator of an automobile upon the designated highway would observe.

Moreover, applying mathematics to the rate of speed at which the evidence of plaintiff tends to show the two automobiles were traveling, it is not unreasonable to infer that while plaintiff's automobile was starting and traveling ten feet or more, the automobile of defendant could come from beyond the range of vision of one stopping at the intersection, whereas if traveling at a prudent rate of speed it would not be expected to do so. In other words, the case does not come within the purview of those cases where the evidence tends to show that the driver failed to see what was in clear view.

Attention is given to photographs sent up as parts of the case on appeal. They were admitted in the trial court only for purposes of illustrating the testimony of witnesses. They may not be admitted as substantive evidence. But, where there is evidence of the accuracy of a photograph, a witness may use it for the restricted purpose of explaining or illustrating to the jury his testimony relevant and material to some matter in contro-

versy. See *S. v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824, where authorities are assembled. See also *Coach Co. v. Motor Lines,* 229 N.C. 650, 50 S.E. 2d 909. As an example, the photographs here show houses along the streets. But there is no testimony that scene of the collision was a business district, as defined in G.S. 20-38 (a), or a residential district, as defined in G.S. 20-38 (w) 1, to which the speed statute G.S. 20-141, as amended, relates.

Now as to the second question: A reading of the charge in the light of the pleadings and evidence offered leads to the conclusion that prejudicial error is not made to appear.

Hence, in the judgment below we find

No error.

PARKER, J., took no part in the consideration or decision of this case.