MRS. ARTHUR FREEDMAN AND THE UTICA MUTUAL INSURANCE COMPANY v. WILLIAM SADLER.

(Filed 30 November, 1955.)

Automobiles § 41g—Evidence of negligence in entering intersection with dominant highway held sufficient to be submitted to the jury.

Plaintiff was traveling along a dominant highway which was divided into two traffic lanes by grass plots 20 feet wide between the two lanes. Defendant, traveling on the servient highway, approached the intersection from plaintiff's left. Plaintiff's evidence was to the effect that as she approached the intersection a car traveling north on the servient highway had stopped between the grass islands to permit her to pass, that she therefore continued into the intersection, and was hit by defendant's car, also traveling north, when it was driven around the left of the stationary car into the intersection. *Held:* The evidence was sufficient to carry the case to the jury on the issue of defendant's actionable negligence.

APPEAL by plaintiff from *Phillips, J.,* at 4 April, 1955, Civil Term of GUILFORD (Greensboro Division).

Civil action in tort to recover for personal injuries and property damage resulting from a collision of automobiles at the intersection of two streets.

The plaintiff's evidence discloses that the collision occurred around 2:30 p.m. on 7 April, 1953, at the intersection of West Market Street and Chapman Street, in a residential district of the City of Greensboro. West Market Street runs east and west; Chapman, north and south. West Market Street is divided into two traffic lanes, each about 20 feet wide, with a grass plaza some 20 feet in width lying between the two lanes. Chapman Street is about 25 feet wide. Stop signs facing on Chapman Street on each side of the intersection make West Market Street the dominant, through street and Chapman the servient one.

The plaintiff was driving her Plymouth station wagon westwardly on West Market Street in the traffic lane on the north side of the grass

plaza; the defendant, operating his Dodge sedan, was going northwardly on Chapman Street. Therefore, as the two vehicles approached the intersection the Plymouth driven by the plaintiff was on the favored street as designated by the stop signs (G.S. 20-158).

As the plaintiff approached the intersection, driving at a speed of about 25 or 30 miles per hour, she observed on her left an automobile headed north on Chapman Street. This automobile was stopped midway the intersection, opposite the grass plaza which separated her traffic lane from the lane on her left, apparently waiting for the plaintiff to pass. As she proceeded into the intersection in front of the stopped car, the defendant suddenly drove around from the left side of the stopped vehicle and proceeded on into the north or westbound traffic lane of West Market Street and collided with the left side of the plaintiff's automobile. In the collision the plaintiff suffered personal injuries and both vehicles were damaged.

The plaintiff testified in part as follows: ". . . as I approached the Chapman Street intersection, . . . I saw a black, rather old car parked right there at the intersection in between the grass islands which run down the center of Market Street. The person driving this black car was stopped, waiting for me. I went ahead because Market Street has the right of way. I did not see Mr. Sadler's car until it hit me, and it knocked my car out of control . . . The car which was stopped out in the intersection was headed north. Mr. Sadler (the defendant) came around the left side of the car, also headed north, and hit me in the north lane of traffic on Market Street." BY THE COURT: "I never did see Mr. Sadler's car until I got out of my car after the collision. There was a car belonging to a student from Guilford College who had his car stopped in between the grass islands headed north. I presume he (Mr. Sadler) must have come around the boy's car and hit me." CROSS EXAMINATION: "I presume that Mr. Sadler had gotten about three-fourths of the way across Market Street because that's where he hit me."

Policeman Velton Mooney, who investigated the collision, testified in part: "Mr. Sadler stated to me that he had stopped for the stop sign on South Chapman Street and started into the intersection. There was a car ahead of him which was in the middle of the intersection. Mr. Sadler pulled to the west side of this car which had stopped. Mr. Sadler proceeded across the street, and he stated he didn't see the Freedman (plaintiff) car until it was there in front of him. Mr. Sadler estimated his speed as he proceeded across the intersection at approximately 10 miles per hour." CROSS EXAMINATION: "Sadler said that there was a car in between the grass islands and that he had pulled up alongside of it. . . . All I remember was that the car was here in the

center of the intersection and Sadler stated that he pulled over to the left side of it. . . . I don't know how far you can see with a clear view to the east toward the downtown part of Greensboro. West Market Street is straight along this area for several blocks. . . . I don't know whether there is anything to prevent a car coming down West Market Street from seeing a car already in the intersection. Mr. Sadler stated he was there and started across and didn't see the Freedman car until he hit it. I don't remember whether he told me this other car was blocking him and almost ran into him."

The defendant's evidence is omitted herefrom as not being pertinent to decision.

At the close of all the evidence the defendant moved for judgment as of nonsuit. The motion was allowed, and from judgment based on such ruling, the plaintiff appeals.

*Smith, Moore, Smith & Pope, Bynum M. Hunter, and Falk, Carruthers & Roth for plaintiff, appellant.*
*Robert A. Merritt for defendant, appellee.*

JOHNSON, J. Our examination of the plaintiff's evidence leaves the impression it was sufficient to carry the case to the jury on the issue of actionable negligence. Decision here is controlled by the principles explained in these decisions: *Caughron v. Walker, ante,* 153; *Blalock v. Hart,* 239 N.C. 475, 80 S.E. 2d 373; *Hawes v. Refining Co.,* 236 N.C. 643, 74 S.E. 2d 17; *Johnson v. Bell,* 234 N.C. 522, 67 S.E. 2d 658.

Since the case goes back for retrial, we refrain from further discussion of the evidence and the applicable principles of law.

The judgment below is

Reversed.