ARCHIBALD W. ROZIER v. WAYNE ARNOLD LANCASTER AND
EDWARD CULLOM LANCASTER

No. 709SC8

(Filed 1 April 1970)

1. Automobiles § 57— intersection accident — defendant's excessive speed

Plaintiff's evidence, which included testimony that defendant approached the intersection from the dominant street at a speed of 70 mph, *held* sufficient to be submitted to the jury on the issue of defendant's negligence in colliding with plaintiff's automobile which had just entered the intersection from the servient street.

2. Automobiles § 79— intersection accident — plaintiff's contributory negligence

Plaintiff's evidence that he stopped before entering an intersection from a servient street, that he looked in both directions and did not see any approaching traffic, that he drove into the intersection and was struck by defendant's car which was traveling on the dominant highway in a direction from which the car could not have been seen by plaintiff until it was 150 to 200 feet from the intersection, and that defendant was traveling at a speed of 70 mph in a 35 mph zone, *held* not to disclose plaintiff's contributory negligence as a matter of law.

3. Automobiles § 33— speed at intersection — anticipation by motorist on servient street

A plaintiff entering an intersection from a servient street is not required to anticipate that a car would be approaching on the dominant street from his left at a rate of speed twice the lawful limit for the area.

APPEAL from *Godwin, S.J.,* June 1969 Civil Session of VANCE Superior Court.

Plaintiff instituted this action on 7 March 1968 to recover for injuries and property damage allegedly sustained when the Ford station wagon he was operating collided with a 1961 Chevrolet automobile owned by defendant Edward Cullom Lancaster and being operated by his son, defendant Wayne Arnold Lancaster.

The collision occurred in Henderson, North Carolina, about 7 p.m. on 12 March 1966 at the intersection of Dorsey Avenue and "old" Raleigh Road (also U.S. Highway No. 1). Raleigh Road is approximately 30 feet wide and runs generally north and south. Dorsey Avenue runs generally northwest and southeast and intersects Raleigh Road from the west at "somewhat of an angle." At the time of the collision a stop sign was located at the intersection and faced traffic moving southeast along Dorsey Avenue. Plaintiff was driving southeast along Dorsey Avenue and the defendants' Chevrolet was

approaching the intersection along Raleigh Road from plaintiff's left. Plaintiff testified that when he reached the intersection he stopped at the edge of Raleigh Road. He looked first to the left, then to the right, and a second time to the left and saw no approaching traffic. He then drove into the intersection. Plaintiff estimated that because of a curve in Raleigh Road he could see only 150 feet to his left when he stopped at the intersection.

The police officer who investigated the collision noted that there was debris in the southbound lane of Raleigh Road, close to the centerline, and directly in front of Dorsey Avenue. There were no skid marks approaching the debris although there were tire scuff marks where the vehicles had been knocked around. Plaintiff's station wagon was damaged extensively on the left side. Defendants' Chevrolet was damaged about the front. The driver of the Chevrolet admitted to the officer that at the time of the collision "he was possibly getting on it a little bit." The lawful speed limit in the area was 35 miles per hour. The officer further testified that because of a curve in Raleigh Road and also because of certain obstructions, a driver traveling on Dorsey Avenue in the direction plaintiff was traveling could only see 150 to 200 feet to his left along Raleigh Road when stopped at the edge of the intersection.

Joseph Kester Bowen testified for plaintiff that on the night of the collision he was at a service station located at the intersection of Raleigh Road and Dorsey Avenue. He stated that he observed defendants' car traveling at a high rate of speed toward the intersection immediately before the collision. The witness testified without objection as follows:

"The sound that I heard coming from the automobile when I first saw it, it sounded very much as if it was winding out in its gears, coming up No. 1, headed toward Raleigh, and that was my reason for stepping out of the service station, due to the noise of the automobile. As I stepped out of the door, I would say that the car was from 35 feet to 60 feet from me. It was to my left as I stepped out of the building. I looked to my left and followed it up. In my opinion the speed of the automobile at the time was 70 miles per hour."

Defendants stipulated that the Chevrolet automobile was being operated with the knowledge, consent and approval of the owner and that the owner would be responsible in law for the negligence, if any, of the driver.

At the conclusion of the plaintiff's evidence defendants' motion for judgment as of nonsuit was allowed and plaintiff appealed.

*Robert S. Hight; Perry, Kittrell, Blackburn & Blackburn by Charles F. Blackburn for plaintiff appellant.*

*Teague, Johnson, Patterson, Dilthey & Clay by C. Woodrow Teague for defendant appellees.*

GRAHAM, J.

[1]　In our opinion the evidence is unquestionably sufficient to be submitted to the jury on the issue of defendants' negligence as a proximate cause of plaintiff's injuries and damages. The more difficult question is whether the plaintiff's evidence, taken in the light most favorable to him, together with all inferences favorable to him which may reasonably be drawn therefrom, so clearly establishes his own negligence as a proximate cause of his injuries and damages that no other conclusion can reasonably be drawn. *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47; *Anderson v. Carter,* 272 N.C. 426, 158 S.E. 2d 607; *Black v. Wilkinson,* 269 N.C. 689, 153 S.E. 2d 333; *Ford v. Smith,* 6 N.C. App. 539, 170 S.E. 2d 548.

In the case of *Smith v. Jones,* 263 N.C. 245, 139 S.E. 2d 205, the plaintiff's evidence indicated that she stopped at the intersection and looked in both directions. She could see approximately 145 to 150 feet to her right. She entered the street without seeing any traffic and was struck by defendants' car which was approaching from her right. In a *per curiam* opinion the court stated:

> "We concede this is a very close case. Even so, in view of the fact that a motor vehicle approaching the intersection involved from the north of Rockford Street cannot be seen until it arrives at or near the crest of the hill, approximately 145 to 150 feet from the intersection, we think the evidence of the plaintiff, when considered in the light most favorable to her, as it must be on a motion for nonsuit, is sufficient to carry the case to the jury."

[2, 3]　We fail to find any substantial difference between the *Smith* case and the case at hand. There the plaintiff traveled slightly further before being struck, as the front of her car had reached the opposite edge of the intersecting street. But here we have evidence that defendants' vehicle was moving toward the intersection at 70 miles per hour in a 35 miles per hour speed zone. A lack of tire marks indicates that brakes were never applied. If this evidence is believed, less than one and one-half seconds elapsed from the time defendants' vehicle reached a point where it could be seen by a motorist stopped at the intersection until it reached the intersection.

Under such circumstances we cannot say as a matter of law that defendants' vehicle would have been within the scope of plaintiff's vision and should have been seen by him before he entered the intersection. Plaintiff was not required to anticipate, before entering the intersection, that a car would be approaching from his left at a rate of speed twice the lawful limit for the area. See *Bobbitt v. Haynes*, 231 N.C. 373, 57 S.E. 2d 361, and cases therein cited.

We have carefully examined the various cases cited by the defendants. The only conclusion that may be drawn from the facts in each of these cases is that if the plaintiff had looked before entering the intersection he would or should have seen the vehicle approaching along the dominant highway. In the instant case, when the evidence is considered in the light most favorable to plaintiff, inferences arise which would support a contrary conclusion. It is therefore our opinion that the case should have been submitted to the jury.

Reversed.

BROCK and BRITT, JJ., concur.