MILTON T. LEWIS v. AIROLL BRUNSTON AND REGINALD D. YATES

No. 858SC215

(Filed 21 January 1986)

**Automobiles and Other Vehicles §§ 79, 91.3— intersection accident—contributory negligence—speed competition—willful and wanton negligence**

> In an action to recover damages for personal injuries sustained by plain-tiff in an automobile accident, the trial court erred in directing verdicts for defendants on the ground that plaintiff was contributorily negligent as a mat-ter of law where the evidence tended to show that plaintiff approached a T in-tersection, stopped, looked both ways, waited for a car on his right to pass, looked both ways again and saw defendants' cars approximately 470 feet from his left, proceeded to turn left in front of defendants and was then struck in his own lane of travel by defendants' cars which were traveling 75 to 80 m.p.h. bumper to bumper just prior to the collision; while plaintiff's evidence would permit a finding that negligence on his part was a contributing proximate cause of the collision, evidence did not establish that he was contributorily negligent as a matter of law; and plaintiff's evidence of defendants' speed com-petition on the highway would permit a finding of willful or wanton negligence on defendants' part as the proximate cause of the accident.

APPEAL from *Barefoot, Judge*. Judgment entered 23 October 1984 in Superior Court, LENOIR County. Heard in the Court of Ap-peals 27 September 1985.

*Allen, Hooten & Hodges by Imelda J. Pate for plaintiff appel-lant.*

*Wallace, Barwick, Landis, Rodgman & Bower by Paul A. Rodgman for defendant appellee.*

*Morris, Rochelle, Duke & Braswell by Thomas H. Morris for defendant appellee, Reginald D. Yates.*

COZORT, Judge.

This is a civil action in which plaintiff seeks to recover damages for personal injuries allegedly sustained as a result of defendants' negligence in an automobile accident. The accident oc-curred on 7 March 1981 when plaintiff, after stopping his car at a stop sign on Fitzgerald Drive, was struck by defendants' cars as he was turning left onto Tower Hill Road. Plaintiff alleged negli-gence and wilful or wanton negligence on defendants' part. Both defendants answered denying any negligence and alternatively

asserted contributory negligence on plaintiff's part. Defendant Yates also counterclaimed against plaintiff and cross-claimed against defendant Brunston. At the close of plaintiff's evidence both defendants moved for a directed verdict. The trial court granted defendants' motion for a directed verdict holding that plaintiff was contributorily negligent as a matter of law. The trial court, with the consent of defendant Yates, dismissed with prejudice Yates' claims against plaintiff and defendant Brunston. We reverse the trial court's granting of directed verdict for defendants.

The test for directing a verdict for a defendant on the ground of contributory negligence is succinctly stated in *Brown v. Hale*, 263 N.C. 176, 178, 139 S.E. 2d 210, 212 (1964): The motion for directed verdict should be granted only when "the evidence, when considered in the light most favorable to plaintiff, establishes plaintiff's contributory negligence so clearly that no other reasonable inference or conclusion may be drawn therefrom."

Considered in the light most favorable to him, plaintiff's evidence shows the following:

On 7 March 1981 between 11:30 p.m. and 12:00 a.m., plaintiff was driving south in his car on Fitzgerald Drive in Kinston, N.C. Fitzgerald Drive runs in a north and south direction and connects with Tower Hill Road, which runs in an east and west direction, forming a "T" intersection. West is toward Kinston. Traffic on Fitzgerald Drive has to stop in obedience to a stop sign that is positioned at the corner of Fitzgerald Drive and Tower Hill Road. The speed limit on Tower Hill Road at the intersection is 45 m.p.h.

Plaintiff stopped at the stop sign on Fitzgerald Drive with his left turn signal on. Plaintiff looked both ways after he stopped. Plaintiff was familiar with a two-block span of Tower Hill Road from the intersection of Tower Hill Road and Fitzgerald Drive to the intersection of Tower Hill Road and Girl Scout Road, which is approximately 470 feet east of the Fitzgerald Drive intersection. Plaintiff had driven through the intersection of Tower Hill Road and Fitzgerald Drive earlier that evening.

At the stop sign plaintiff could see approximately 500 feet to his left, down to the intersection of Girl Scout Road and Tower

Hill Road. Upon looking both ways, plaintiff saw a car to his right traveling east on Tower Hill Road. Plaintiff waited for this car to pass. Plaintiff looked both ways again and saw the headlights of two cars to his left on Tower Hill Road. When plaintiff saw the headlights of the two cars, they were at the intersection of Girl Scout Road and Tower Hill Road. Plaintiff knew the speed limit on Tower Hill Road was 45 m.p.h., but he could not tell how fast the cars were going when he first saw them.

Seeing that the cars were 400 to 500 feet to his left, plaintiff proceeded to make a left turn onto Tower Hill Road. Plaintiff had entered into his lane of travel on Tower Hill Road and was straightening up when he heard tires squealing and saw lights. He was then hit by the defendants' cars, one after the other. Plaintiff's car was hit initially on the left rear. The impact with the first car spun his car around, then the other car hit his. Plaintiff's car ultimately came to rest against a telephone pole.

On direct examination plaintiff testified about the location of his car upon impact with the first car: "I was turning to the left when the car hit me. At the time I was first hit, I had not completely straightened my car up to head up Tower Hill Road, it was still in an angle but I was in the right lane." On cross-examination by defendant Brunston's attorney, plaintiff testified:

All I remember after I pulled out was that I was straightening up in my lane, there were headlights and squealing tires. One car hit me, then another. The first car spun me around. Then there was another hit and from there I was headed into the telephone pole. I do not know where the second car hit me. I am sure that the first car hit me on the back left, then spun me around.

And on cross-examination by defendant Yates' attorney plaintiff testified about the collision as follows:

After I looked both ways, the car coming to the right passed by and I looked both ways again. I saw headlights and when I proceeded with my turn, that's when the lights were right up on me and there was squealing tires and when my wife said, "Look out," that's when one hit me and spun me around and then the other and then we were thrown in the telephone pole. I was in my lane straightening up and that's when we heard squealing tires and my wife said, look out.

* * * *

I had already turned into Tower Hill Road and I was straightening up in my lane of travel when suddenly I saw the lights coming towards me and the tires squealing. I was completing my turn at an angle in the center of that intersection when I was struck. I didn't say it was completed. I was in the process of straightening up when I was hit.

The driver of the car, which plaintiff waited for on Tower Hill Road prior to entering the intersection, testified that as he approached the Fitzgerald Drive intersection, he observed a car sitting at the stop sign and that this car waited for him to pass. As he passed through this intersection, he saw in front of him on Tower Hill Road car lights and could not tell how fast the car was coming or how many cars there were. When the defendants' cars passed him, the witness testified that the speed of the defendants' two cars was "75 to 80. 75, no less than 80." At the time the defendants' cars passed him they were "bumper to bumper" and less than two seconds later he heard a crash. The witness turned his car around and went to the crash site. He did not observe any changes in the speed of the two cars that passed him. While he saw the plaintiff's car pull out in front of the defendants' cars, he did not see the collision happen.

Lynwood Bradshaw, who came upon the accident scene, testified that about three minutes prior to the collision defendants' cars passed him on Tower Hill Road about one-half mile from Fitzgerald Drive. At the time defendants' cars passed him they were "between two and three feet together. One was in front of the other . . . [and] the cars were speeding." Bradshaw testified that at that time he thought the speed limit on Tower Hill Road was "50 or 55 miles an hour."

Kinston Police Officer Robert G. Brown was called by the plaintiff as a witness. Officer Brown received a call about the accident at 11:43 p.m. on 7 March 1981. When he arrived at the accident scene he saw three cars near the intersection of Fitzgerald Drive and Tower Hill Road. Both defendants' cars were off the road in ditches on opposite sides of Tower Hill Road. Plaintiff's car was up against a utility pole off the northwest corner of the intersection. Brunston's car was 94 feet from the middle of the intersection and was on the same side of the road as plaintiff's car.

Yates' car was across the road in a ditch facing away from Kinston. At the intersection Officer Brown found a pile of debris and glass. The debris was located to the south of the Fitzgerald Drive intersection on the right-hand side of Tower Hill Road going east out of Kinston. Officer Brown also found two sets of fresh skid marks on Tower Hill Road. One set of marks measured 294 feet from the debris and glass. The other set of skid marks measured 109 feet from the debris and glass. Brown testified that both sets of skid marks "follow the same line side by side going down Tower Hill Road and veer over to the left into the center and even across the center line and as it gets on down the road." The 294 feet of skid marks follow the Brunston car. Additional skid marks of 68 feet were found from the debris to where the Brunston car was in the side ditch. Additional skid marks of 57 feet were found from the debris to the ditch where Yates' car came to rest.

The color of defendant Brunston's car was red and the color of defendant Yates' car was yellow, while plaintiff's car was beige. Officer Brown found red paint on the back of Yates' car and yellow paint on the front of Brunston's car. Both yellow and red paint were on plaintiff's car. Beige paint was also on Brunston's car.

Officer Brown interviewed both defendants on the evening of the accident and both admitted they were going 55 or 60 m.p.h. on Tower Hill Road. Defendant Brunston told Officer Brown he was headed west on Tower Hill Road and "there was another car right on his bumper."

At the close of plaintiff's evidence the trial court, upon motion of the defendants, granted a directed verdict for defendants.

G.S. 20-158(b)(1) provides that "[w]hen a stop sign has been erected . . . at an intersection, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto and yield the right-of-way to vehicles operating on the designated main-traveled or through highway." A violation of G.S. 20-158(b)(1) is not "negligence or contributory negligence per se in any action at law for injury to person or property, but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether a party was guilty of negligence or contributory negligence." G.S. 20-158(d).

The duty of a driver on a servient highway is summarized in *Matheny v. Central Motor Lines, Inc.*, 233 N.C. 673, 679, 65 S.E. 2d 361, 366 (1951):

> One who is required to stop before entering a highway should not proceed, with oncoming vehicles in view, until in the exercise of due care he can determine that he can do so with reasonable assurance of safety. [Citation omitted.] Generally when the driver of an automobile is required to stop at an intersection he must yield the right of way to an automobile approaching on the intersecting highway [citation omitted] and unless the approaching automobile is far enough away to afford reasonable ground for the belief that he can cross in safety he must delay his progress until the other vehicle has passed. . . .

The automobile driver on a dominant highway approaching an intersecting servient highway is not under a duty to anticipate that the automobile driver on the servient highway "will fail to stop as required by . . . statute, and, in the absence of anything which gives or should give notice to the contrary, he will be entitled to assume and to act upon the assumption, even to the last moment," that the automobile driver on the servient highway will obey the law and stop before entering the dominant highway. *Hawes v. Atlantic Refining Co.*, 236 N.C. 643, 650, 74 S.E. 2d 17, 21-22 (1953). The automobile driver on the servient intersecting highway, however, is not under a duty to anticipate that the automobile driver on the dominant highway, "approaching the intersection of the two highways, will fail to observe the speed regulations, and the rules of the road, and, in the absence of anything which gives or should give notice to the contrary, he is entitled to assume and to act upon the assumption" that the automobile driver on the dominant highway will obey "such regulations and the rules of the road." *Id.*, 236 N.C. at 650, 74 S.E. 2d at 22.

In support of their motion for a directed verdict, defendants presented to the trial court a copy of *Warren v. Lewis*, 273 N.C. 457, 160 S.E. 2d 305 (1968). On appeal defendants rely on *Warren v. Lewis* in support of their position that a directed verdict was properly granted. The facts in *Warren v. Lewis*, however, are readily distinguishable from the facts here. In *Warren v. Lewis*,

the plaintiff attempted to enter the main highway (Shattalon Drive) from the north over a private road, intending to turn east on Shattalon. A white line separated the lanes for eastbound and westbound traffic. The defendant, driving his Dodge eastward, crashed into the rear of the plaintiff's Chevrolet before the plaintiff completed his intended movement. Judgment of involuntary nonsuit was affirmed on the ground that the plaintiff's evidence disclosed contributory negligence as a matter of law. The opinion of Justice Higgins for this Court states: "His (plaintiff's) view from the intersection to his right was unobstructed to the top of a hill 400 to 600 feet west of the intersection. An automobile could be seen an additional 50 feet beyond the crest. In clear weather, and in broad daylight, he entered the main highway, without discovering the vehicle approaching from the west. The physical evidence indicated the plaintiff had moved only a distance of approximately 16 feet—6 to and 10 across the north lane before the collision. The plaintiff testified he never saw the defendant's Dodge before this '. . . his third wreck.'" 273 N.C. at 460, 160 S.E. 2d at 307.

*Blackwell v. Butts*, 278 N.C. 615, 622, 180 S.E. 2d 835, 839 (1971). Additionally, in *Warren v. Lewis*, the evidence showed defendant was traveling within the speed limit at the time of the accident. Here, unlike in *Warren v. Lewis*, the evidence shows that plaintiff saw defendants' cars before the collision. The evidence, considered in the light most favorable to plaintiff, shows that, after waiting for a car on his right to pass, plaintiff looked both ways again and saw defendants' cars approximately 470 feet from his left. Plaintiff proceeded to turn left onto Tower Hill Road and was then struck in plaintiff's lane of travel on Tower Hill Road by defendants' cars which were traveling 75 to 80 m.p.h. bumper to bumper just prior to the collision.

While the plaintiff's evidence would permit a finding that negligence on plaintiff's part was a contributing proximate cause of the collision and damages to plaintiff's car, the evidence does not establish that plaintiff was contributorily negligent *as a matter of law*. Whether the defendants' cars were far enough away to afford plaintiff reasonable ground for the belief that he could make his turn in safety is a question for the jury.

Plaintiff's evidence raises a jury question of whether defendants were guilty of at least ordinary negligence, and, if so, whether plaintiff was contributorily negligent.

As to whether plaintiff's evidence would permit a finding of willful or wanton negligence on defendants' part, we hold that it would permit such a finding.

Normally, contributory negligence on a plaintiff's part does not bar recovery when the willful or wanton conduct of a defendant is a proximate cause of plaintiff's injuries. *Brewer v. Harris*, 279 N.C. 288, 182 S.E. 2d 345 (1971).

In his complaint plaintiff alleges that defendants "[o]perated a motor vehicle willfully in speed competition in violation of G.S. 20-141.3(b)." In pertinent part, G.S. 20-141.3(b) provides that "[i]t shall be unlawful for any person to operate a motor vehicle on a street or highway willfully in speed competition with another motor vehicle." A violation of this statute is negligence *per se*. *Boykin v. Bennett*, 253 N.C. 725, 118 S.E. 2d 12 (1961). Plaintiff's evidence showed that about one-half mile before and immediately prior to the accident defendants were driving their cars at night "bumper to bumper" at speeds of 75 to 80 m.p.h. on Tower Hill Road where the speed limit was 45 m.p.h. This evidence, if believed by the jury, is sufficient to support a finding by the jury that defendants "operated their cars wilfully in speed competition in violation of G.S. 20-141.3(b) and that their negligence in this respect proximately caused the collision." *Mason v. Gillikin*, 256 N.C. 527, 530, 124 S.E. 2d 537, 539 (1962); *cf. Hord v. Atkinson*, 68 N.C. App. 346, 315 S.E. 2d 339 (1984). Under the facts of this case, if defendants were found to be in violation of G.S. 20-141.3(b), then it would be a question for the jury whether such negligence was a proximate cause of the accident. *Cf. Harrington v. Collins*, 40 N.C. App. 530, 253 S.E. 2d 288, *aff'd*, 298 N.C. 535, 259 S.E. 2d 275 (1979) (court held that defendant's prearranged racing was, as a matter of law, the proximate cause of the accident).

In *Harrington v. Collins, supra*, we held that a violation of G.S. 20-141.3(a) (prearranged speed competition) constituted "wilful" or "wanton" negligence, as those terms are defined in *Brewer v. Harris, supra*, 279 N.C. at 296-97, 182 S.E. 2d at 350. We hold that a violation of G.S. 20-141.3(b) also constitutes wilful or wanton negligence. Like 20-141.3(a), 20-141.3(b) "by its terms involves

wilful and wanton conduct." *Harrington v. Collins, supra*, 40 N.C. App. at 533, 253 S.E. 2d at 290. As we noted in *Harrington v. Collins*, " 'two motorists racing make a plain and serious danger to every other person driving along the highway, and one which is often impossible to avoid, it is of itself an act of such negligence as to make the racing drivers responsible for damaged [*sic*] caused by it . . . .' " *Id., quoting Boykin v. Bennett, supra*, 253 N.C. at 728, 118 S.E. 2d at 14.

It was error for the trial court to grant defendants' motion for directed verdict.

The Judgment is reversed and the cause is remanded for a new trial.

Reversed and remanded.

Judges WHICHARD and EAGLES concur.