R. W. MARSHBURN v. BILLY RAE PATTERSON, CLYDE EDDLEMAN AND ETHEL EDDLEMAN.

WILBUR W. MARSHBURN, BY HIS NEXT FRIEND, LUCILLE C. MARSHBURN, v. BILLY RAE PATTERSON, CLYDE EDDLEMAN AND ETHEL EDDLEMAN.

(Filed 4 February, 1955.)

1. **Automobiles § 8i—**

When a motorist traveling on a dominant highway and a motorist traveling on an intersecting servient highway approach the intersection of the two highways so nearly at the same time that either one or the other must yield the right of way or else create a dangerous traffic hazard, it is the duty of the motorist on the servient highway to slow down and, if necessary, stop and yield the right of way.

2. **Same—**

In the absence of some fact or circumstance sufficient to put a man of ordinary prudence on notice that the motorist traveling on the servient highway does not intend to, or cannot slow down in time to, yield the right of way, the failure of a motorist on the dominant highway to keep a proper

lookout cannot constitute one of the proximate causes of a collision at the intersection, since under such circumstances the motorist on the dominant highway has the right to assume that the motorist on the servient highway will yield the right of way as required by law.

**3. Same—**

It is the duty of a motorist traveling along a dominant highway to keep a proper lookout, and where a person of ordinary prudence who is keeping a proper lookout would see and apprehend that a motorist traveling along a servient highway approaching the intersection with the dominant highway is traveling at such high rate of speed that he cannot or will not stop and yield the right of way, or would apprehend any other circumstance sufficient to give him such notice, and such circumstance is apparent to a driver along the dominant highway in time to enable him to stop or slow down so as to avoid collision, the failure of the driver along the dominant highway to keep a proper lookout and reduce speed constitutes a proximate cause of the resulting collision.

**4. Automobiles § 18h (3)—**

Nonsuit will not be entered on the ground of contributory negligence for failure of the driver along a dominant highway to keep a proper lookout if the evidence is conflicting as to whether he could or should have observed, in time to have avoided the collision, circumstances putting him on notice that the driver along the servient highway could not or would not stop and yield the right of way.

**5. Same: Trial § 22b—**

On motion to nonsuit on the ground of the contributory negligence of the driver of the vehicle along the dominant highway in failing to keep a proper lookout, defendant's evidence as to the speed of the car traveling along the servient highway approaching the intersection must be considered on the question of whether the driver on the dominant highway should have known that the other car would not stop and yield the right of way.

**6. Automobiles § 18h (3)—**

In this action to recover for a collision at an intersection of a dominant and servient highway, plaintiff's evidence was to the effect that the vehicle approaching along the servient highway was traveling at such excessive speed that it was apparent the driver could not or would not stop and yield the right of way. Defendant's evidence was to the effect that the driver along the servient highway was traveling at a moderate speed so that no such conclusion was apparent. *Held:* Nonsuit on the ground of the contributory negligence of the driver along the dominant highway in failing to keep a proper lookout was properly denied upon the conflicting evidence.

**7. Same—**

Nonsuit on the ground of contributory negligence for failure of the driver along the dominant highway to keep a proper lookout so as to see that the driver along the servient highway was approaching the intersection at such excessive speed that he could not stop and yield the right of way, *held* properly denied in the absence of evidence as to how far the vehicle on the servient highway was from the intersection when the driver along the dominant highway should have observed it and its manner of approach,

since in the absence of such evidence it is not made to appear that the driver along the dominant highway had notice of the circumstance in time to have avoided the collision.

**8. Trial § 31c—**

Where evidence relating to a material item of damage is admitted but is thereafter withdrawn by the court, an instruction submitting to the jury the substance of the evidence withdrawn must be held for prejudicial error.

APPEAL by defendants from *Clarkson, J.,* May Term 1954, GUILFORD (Greensboro Division).

Two civil actions, one to recover compensation for damages to an automobile, and the other for personal injuries resulting from an intersection automobile collision, consolidated for the purpose of trial.

Wendover Avenue in Greensboro extends in an east-west direction, and is, at Latham Road, an arterial or through highway (U. S. Highway No. 220). Latham Road is an intersecting servient street in said city. On 14 September 1952, at about 8:00 p.m., the plaintiff W. W. Marshburn was a passenger on an automobile being operated by his brother, going westward on Wendover Avenue. The automobile was the property of plaintiff R. W. Marshburn, father of the infant plaintiff, and was maintained as a family purpose vehicle.

Patterson and Ethel Eddleman were traveling south on Latham Road on an automobile which was the property of Ethel Eddleman and her husband, defendant Clyde Eddleman, though the certificate of title was issued to her alone. Patterson was operating this vehicle.

Stop signs were maintained at the intersection of the two streets as required by an ordinance of the city. And as the two vehicles approached the intersection, the Marshburn vehicle was to the left of the Eddleman vehicle.

The testimony offered by plaintiffs tends to show that the Marshburn vehicle was traveling at a reasonable rate of speed—about twenty or twenty-five miles per hour; that the speed of the Eddleman car was excessive—above the maximum of thirty-five miles per hour for a residential area. As the two vehicles approached the intersection, a witness, Dr. Marks, was traveling east on Wendover approaching the same intersection. When he observed the Eddleman vehicle it "was going unusually fast . . . was going too fast to stop . . . The speed was from 50 to 60 m.p.h." So he stopped right at or slightly in the intersection. Patterson proceeded on into the intersection without stopping or decreasing his speed. Marshburn, likewise, without looking to the right or to the left, drove on into the intersection. He did not see the Eddleman vehicle prior to the collision.

As the Eddleman automobile approached the intersection, Ethel Eddleman was pointing out to Patterson, and telling him, which way to go. He

did not see the stop signs or the Marshburn vehicle. He drove into the intersection directly in front of it without slowing down or stopping. The front of the Marshburn car struck the right rear side of the Eddleman vehicle, crossed the intersection, struck the Marks automobile, and came to rest at the side and parallel to the Marks automobile. The Eddleman automobile proceeded on along Latham Road a distance variously estimated at from 150 to 275 feet. A police officer testified that it was 275 feet by actual measurement from the intersection. The major portion of the debris was practically in the center of the intersection. The infant plaintiff was thrown under the Marks vehicle and sustained serious personal injuries. The automobile of the adult plaintiff was substantially damaged. Patterson left the scene of the accident and was later picked up by officers and carried to the police station.

The defendants offered evidence in rebuttal, and Patterson testified that he was traveling about twenty-five or thirty miles per hour as he approached the intersection and "seen one car coming. I thought I had time enough to get out of the intersection. The car I saw was coming from the left. I did not see a car to the right. My intention was to make a left turn at the intersection . . . After the collision, I did not have any control over the car, and the car stopped going down the street." He also testified that both cars struck the car he was operating.

The infant plaintiff had scar tissue on his hand, arm, face, and under his chin. He was permitted to testify, over objection of defendants, that this scar tissue could be eliminated by grafting, and that the Duke Clinic had estimated the cost of such grafting at around $1,100. Thereafter, at the conclusion of the evidence for the plaintiff, the court withdrew this testimony from the jury and instructed them not to consider the same in their deliberations but to erase it from their minds. Then, in charging the jury on the measure of damages, the court made references to the scars and scar tissue and recited as a part of the evidence in respect thereto "that he has a disfigurement of his face and head and under his chin and that it will be necessary to eliminate that disfigurement, if he ever has it eliminated, by skin grafting which would be a long, painful and expensive operation," and instructed the jury that if the infant plaintiff was entitled to recover at all, he is entitled to recover for all injuries, past, present, and prospective, including physical injuries and pain, mental pain and suffering, expenses incurred, including hospital bills, doctors' bills, medicines, and supplies.

During the progress of the trial the court, on motion of defendant Ethel Eddleman, entered a judgment of nonsuit as to her cross action.

The jury, for its verdict, answered the issue of negligence in both cases in the affirmative, the issue of contributory negligence in the case of the infant plaintiff in the negative, awarded plaintiff R. W. Marshburn

property damage in the sum of $1,500 and the infant plaintiff compensation for personal injuries in the sum of $5,000. The court entered judgments on the verdicts, and the defendants excepted and appealed.

*Jordan & Wright for plaintiff appellees.*
*C. M. Llewellyn and M. B. Sherrin for defendant appellants.*

BARNHILL, C. J. During the trial of these causes in the court below, the defendants entered timely motions to dismiss the actions as to both plaintiffs as in case of involuntary nonsuit. The motions were denied and the defendants excepted. These exceptions are the bases of one of defendants' primary assignments of error.

The defendants in their brief concede there is sufficient evidence of negligence on the part of the defendant Patterson to repel their motions for judgment as in case of involuntary nonsuit. They rest their motions, as they must rest, on the alleged contributory negligence of the operator of the Marshburn automobile.

There is evidence tending to show that as the operator of the Marshburn vehicle approached the intersection, he did not look either to the right or to the left. He so testified. Had he been keeping a proper lookout, he could and would have seen the Eddleman vehicle approaching the intersection at approximately the same time. Was his negligence in failing to keep a proper lookout one of the proximate causes of the resulting collision?

When a motorist traveling on a dominant, primary highway and a motorist traveling on a servient, intersecting highway approach the intersection of the two highways so nearly at the same time that either one or the other must yield the right of way or else create a dangerous traffic hazard, it is the duty of the motorist on the servient highway to slow down and, if necessary, stop and yield the right of way. And the motorist traveling on the dominant highway, nothing else appearing, has the right to assume that the motorist on the servient highway will yield the right of way as he is by law required to do. *Cox v. Freight Lines,* 236 N.C. 72, 72 S.E. 2d 25.

Therefore, in the absence of some fact or circumstance sufficient to put a man of ordinary prudence on notice that the motorist traveling on the servient highway does not intend to or cannot slow down in time to yield the right of way, a motorist on the dominant highway breaches no duty he owes the motorist on the servient highway in his failure to keep a proper lookout. Ordinarily any negligence on his part in this respect does not constitute one of the proximate causes of a collision at the intersection. *Loving v. Whitton, ante,* p. 273; *Harrison v. Kapp, ante,* p. 408.

When, however, a motorist on the dominant highway has time to realize, or by the exercise of proper care and watchfulness should realize, that the motorist on the servient highway is unaware of his presence, or does not intend to or cannot observe the law, or is in a somewhat helpless condition, or is apparently unable to avoid the approaching machine, the negligence of the motorist on the dominant highway may be considered one of the proximate causes of a collision at the intersection. *Guthrie v. Gocking,* 214 N.C. 513, 199 S.E. 707; *Cory v. Cory,* 205 N.C. 205, 170 S.E. 629; *James v. Coach Co.,* 207 N.C. 742, 178 S.E. 607.

That is to say, it is the duty of a motorist traveling on a through street to keep a proper lookout, and he is charged with having seen what he should have seen. When he observes a vehicle traveling on a servient street approaching the same intersection at such a high rate of speed or under such other circumstances that he, in the exercise of ordinary care, knows or should know that the motorist on the servient highway cannot or will not stop and yield the right of way, it is the duty of the motorist on the through street to reduce his speed and use all precautions reasonably at his command to avoid a collision. If the speed of the vehicle on the servient road, or some other circumstance, is such that it puts him on notice that the other motorist cannot stop, and the circumstances are such that he (the motorist on the dominant road) could avoid the collision after observing this condition, but he does not do so for the reason he is not keeping a proper lookout, then his failure to keep a proper lookout and to reduce his speed must be deemed to be one of the proximate causes of the resulting collision. *Atkins v. Transportation Co.,* 224 N.C. 688, 32 S.E. 2d 209; *Ferguson v. Asheville,* 213 N.C. 569, 197 S.E. 146; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307; *Howard v. Bingham,* 231 N.C. 420, 57 S.E. 2d 401; *Thomas v. Motor Lines,* 230 N.C. 122, 52 S.E. 2d 377.

It follows that the court will not sustain a motion for judgment of involuntary nonsuit for the reason plaintiff's evidence tends to show that he failed to keep a proper lookout when the evidence in respect thereto is conflicting.

Here, on the question posed for decision the record discloses a somewhat novel situation. Plaintiff offered evidence tending to show that if the operator of the Marshburn automobile had been keeping a proper lookout he would have observed that the Eddleman vehicle was traveling at such an excessive speed that it could not be stopped before entering the intersection so as to yield the right of way. Thus he would have been put on notice he could no longer rely upon the assumption that Patterson would yield the right of way.

On the other hand, however, the defendants offered testimony tending to show that the Eddleman vehicle approached and entered the inter-

section at a speed of only twenty or twenty-five miles per hour. In ruling on the motion for judgment of nonsuit we must consider this testimony offered by defendants. They vouched for it and are in no position to insist that we disregard it and sustain the exceptions on the evidence offered by the plaintiffs alone.

Thus the evidence is conflicting as to the condition existing at the time, particularly in respect to whether the operator of the Marshburn automobile was put on notice that Patterson would not yield the right of way. Hence it was a question for the jury.

A further significant circumstance to be considered in ruling on these assignments of error is the fact that it is not made to appear how far the Marshburn vehicle was from the intersection at the time its operator should have observed the Eddleman automobile and its manner of approach. Even if the circumstances were such as to put Marshburn on notice that Patterson would not yield the right of way, was Marshburn then a sufficient distance away to reduce his speed and avoid the collision? The record fails to answer, and the absence of such proof in itself is sufficient to repel the motion.

The other exceptions directed to alleged error in the trial on the issues in the R. W. Marshburn case are not of sufficient merit to require discussion. Suffice it to say that we have examined them and find that they fail to point out prejudicial error.

However, in the Wilbur W. Marshburn case there is an assignment of error to which we must direct our attention. During the progress of the trial the court permitted this plaintiff to testify over the objection of the defendants that the Duke Clinic had estimated that plastic surgery to remove the scars on his arm, face, and under his chin would cost around $1,100. Thereafter, on the next day, the court withdrew this testimony and instructed the jury to disregard it. Then the court, in its charge, instructed the jury in part as follows:

". . . he (plaintiff Wilbur W. Marshburn) contends . . . that he has suffered permanent injuries in that he has a disfigurement of his face and head and under his chin and that it will be necessary to eliminate that disfigurement, if he ever has it eliminated, by skin grafting which would be a long, painful and expensive operation."

It thereafter further instructed the jury that plaintiff was entitled to recover, if at all, ". . . the amount of expenses reasonably incurred by him in the treatment of his injuries, including hospital bills, doctors' bills, medicines and supplies . . ."

Thus the court submitted to the jury the substance of evidence it had first admitted and then withdrawn from the consideration of the jury. *Curlee v. Scales,* 223 N.C. 788, 28 S.E. 2d 576; *S. v. Wyont,* 218 N.C. 505, 11 S.E. 2d 473. And the testimony was not related to its probable

effect on plaintiff's future earning capacity. This evidence had a direct bearing upon the amount of damages this plaintiff was entitled to recover, and the submission thereof to the jury under the circumstances here disclosed constitutes prejudicial error which entitles the defendants to a new trial in this cause.

In so holding we do not mean to say that the jury is not to consider any disfigurement caused by the injuries received by him. An outward, observable blemish, scar, or mutilation which tends to mar the appearance to the extent that it lessens or reduces the opportunities of the injured party to obtain remunerative employment might well effectuate a diminution of his future earning capacity. It is so considered under the Workmen's Compensation Act, G.S. 97-31 (v) (w); *Arp v. Wood & Co.,* 207 N.C. 41, 175 S.E. 719; *Stanley v. Hyman-Michaels Co.,* 222 N.C. 257, 22 S.E. 2d 570. We will reserve that question until it is properly posed for decision.

Here the charge considered in the light of all the attendant circumstances leads us to the conclusion that its probable prejudicial effect was such as to warrant a new trial. It is so ordered.

In R. W. Marshburn v. Patterson—No Error.

In W. W. Marshburn v. Patterson—New Trial.