WILLIAM O. CAUGHRON v. GLENN WALKER, BILLY RAY WALKER AND W. R. WALKER, GUARDIAN AD LITEM FOR BILLY RAY WALKER.

(Filed 23 November, 1955.)

**1. Automobiles § 17—**

The operator of a motor vehicle along a dominant highway approaching an intersecting servient highway is under no duty to anticipate that the operator of a motor vehicle approaching along the servient highway will fail to stop as required by statute, and, in the absence of anything which

gives, or in the exercise of due care should give, notice to the contrary, the driver on the dominant highway is entitled to assume and to act upon the assumption, even to the last moment, that the operator of the vehicle on the servient highway will act in obedience to the statute and stop before entering the intersection.

**2. Same—**

A motorist traveling along the dominant highway approaching an intersection with a servient highway does not have the absolute right of way in the sense he is not bound to exercise that degree of care which an ordinarily prudent person would exercise under similar circumstances in driving at a speed no greater than is reasonable and prudent under existing conditions, in keeping his vehicle under control, in keeping a reasonably careful lookout, and in taking such action as an ordinarily prudent person would take in avoiding collision with persons or vehicles upon the highway when, in the exercise of due care, danger of such collision is discovered or should have been discovered.

**3. Automobiles § 41g—**

Evidence of negligence of defendant's driver in entering an intersection with dominant highway without stopping as required by statute, *is held* sufficient to be submitted to the jury on the issue of negligence proximately causing the collision with plaintiff's car which was being driven along the dominant highway.

**4. Automobiles § 42g—**

Evidence *held* not to disclose contributory negligence as a matter of law on part of the driver of plaintiff's car, traveling along the dominant highway, in colliding with defendant's vehicle which entered the intersection from a servient highway without stopping.

**5. Negligence § 19c—**

Nonsuit on the ground of contributory negligence may be allowed when, and only when, no other inference is reasonably deducible from the plaintiff's evidence.

**6. Automobiles § 54f—**

The admission of defendant that he owned the truck involved in the collision suffices to take the case to the jury against him under the doctrine of *respondeat superior*. G.S. 20-71.1.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Armstrong, J.,* at March Term, 1955, of RANDOLPH.

*Ottway Burton for plaintiff, appellant.*
*No counsel contra.*

JOHNSON, J. This is a civil action in tort brought by the plaintiff to recover damages for injury to his automobile, allegedly caused by the

negligence of the defendants. The trial court allowed the defendants' motion for judgment as of nonsuit at the close of the plaintiff's evidence. The appeal challenges the correctness of this ruling and brings into focus the facts disclosed by the evidence, which are summarized as follows:

The wreck occurred about 6:30 a.m. on the morning of 10 July, 1953, on the Flint Hill Road at the junction of the Hoover Hill Road, in Randolph County. The Flint Hill Road runs north and south. It is joined on the west side, but not crossed, by the Hoover Hill Road, which runs southwest for some distance south of the junction and converges into the Flint Hill Road at an angle of about 45 degrees. The two roads thus form a "V" on the south side of the junction. A stop sign facing southwest on the Hoover Hill Road just south of the junction made the Flint Hill Road the dominant, through highway, and the Hoover Hill Road the servient highway. Two vehicles were involved in the wreck, a GMC truck and a Mercury automobile. The Mercury belonged to the plaintiff. His son was driving it northwardly along the Flint Hill Road toward the junction. The truck, admittedly owned by the defendant Glenn Walker, was being driven by his alleged agent, Billy Ray Walker, along the Hoover Hill Road in a northeasterly direction approaching the junction.

As the two vehicles approached the junction, the plaintiff's Mercury was on the favored highway as designated by the stop sign. Notwithstanding this, the driver of the truck, approaching from the left on the servient road, did not come to a complete stop. Instead, he drove on into the intersection and made a left turn to go north along the Flint Hill Road, directly in front of the plaintiff's oncoming Mercury. Whereupon the driver of the Mercury made a sharp turn to the right in order to avoid colliding with the rear of the truck. In doing so he ran off the highway on the right side and overturned about 100 feet north of the junction, causing substantial damage to the Mercury.

Patrolman J. B. Barrett, who arrived immediately after the wreck, testified in part: "Billy Ray Walker (driver of the truck) stated to me that he pulled out of the Hoover Hill Road and didn't stop; that he was running between five and ten miles per hour. . . . there is a slight curve on the Flint Hill Road and also about a 20 degree hill crest, between the roads, a garage, grocery store and filling station combined, a large building owned by Carl Hill. As to the vision a motorist has going the way Mr. Walker was going north to the Flint Hill from the stop sign, I would say the vision is approximately 300 feet south." CROSS EXAMINATION: "Billy told me that he didn't come to a dead stop; he did tell me that he slowed down at the stop sign so he could see down the road as far as he could see. He told me the Mercury wasn't in sight at the

CAUGHRON *v.* WALKER.

time he pulled out into the intersection. . . . I found skids leading up to the Mercury. I found sixty steps of skids, one side, left front and left rear wheels. . . . I estimate that I found approximately 180 feet of skids. . . . The 180 feet of skid was not all on the pavement, went off the pavement, I haven't got the number of feet. I didn't find any skids at any point on the right front or right rear wheels. . . . The Mercury was damaged on the top and left side."

Steve Caughron, operator of the plaintiff's Mercury, testified in part: "I was going north. I saw the truck and I could have stopped but I knew the stop sign was there and I thought he was going to stop. He slowed up and I kept going, and when he got there he was a little ahead anyway, he came out and the front end of the car barely missed the back of the truck, and I turned off and it turned over, . . . He did not stop before entering the Flint Hill Road. I was going fifty or fifty-five. Yes, sir, the back end of the truck came out and almost hit me. I would have gone around the truck but couldn't; had to go off to keep from getting hit. As the back end of the truck came out, I had to leave the road to keep from hitting the back of the truck. The shoulders wasn't wide enough to run on, because my car jumped off; the left front wheel dropped in a hole and twisted the car and it came up and went down on its top. . . ." CROSS EXAMINATION: "As to how far down was I when I first saw the truck, . . . I probably saw him 100 yards. Billy was 150 or 200 feet from the intersection. . . . I do not know how far I was from the intersection when he reached the stop sign. . . . I was not 300 feet down the road when he was at the stop sign. I wouldn't know about 250. I could have been. . . . I didn't put on the brakes as soon as I saw him. If I had I could have stopped. . . . As to why didn't I stop, because he had the stop sign. . . . I didn't slow down until I seen he wasn't going to stop."

The plaintiff, William O. Caughron, testified: "I got to the scene around 8 o'clock. . . . My son and I measured the skid marks. I measured the rubber tracks where the brakes had gradually took hold, 96 feet, with a steel tape."

It is established by our decisions that where a highway is designated as a main traveled or dominant highway by the erection of stop signs at the entrances thereto from intersecting servient highways, as prescribed by G.S. 20-158 (a), the operator of a motor vehicle traveling upon such main traveled or dominant highway and approaching an intersecting servient highway is under no duty to anticipate that the operator of a motor vehicle approaching on an intersecting servient highway will fail to stop as required by the statute, and, in the absence of anything which gives, or in the exercise of due care should give, notice to the contrary, the driver on the dominant highway is entitled to as-

sume and to act upon the assumption, even to the last moment, that the operator of the vehicle on the servient highway will act in obedience to the statute and stop before entering the dominant highway. *Hawes v. Refining Co.*, 236 N.C. 643, 74 S.E. 2d 17; *Loving v. Whitton*, 241 N.C. 273, 84 S.E. 2d 919.

"However, the driver on a favored highway protected by a statutory stop sign (G.S. 20-158) does not have the absolute right of way in the sense he is not bound to exercise care toward traffic approaching on an intersecting unfavored highway. It is his duty, notwithstanding his favored position, to observe ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty it is incumbent upon him in approaching and traversing such an intersection (1) to drive at a speed no greater than is reasonable and prudent under the conditions then existing, (2) to keep his motor vehicle under control, (3) to keep a reasonably careful lookout, and (4) to take such action as an ordinarily prudent person would take in avoiding collision with persons or vehicles upon the highway when, in the exercise of due care, danger of such collision is discovered or should have been discovered." *Blalock v. Hart*, 239 N.C. 475, 479, 80 S.E. 2d 373, *377*. See also *Johnson v. Bell*, 234 N.C. 522, 67 S.E. 2d 658.

Our examination of the evidence leaves the impression it is sufficient to justify, though not necessarily to impel, the inference that the damage to the plaintiff's automobile was proximately caused by the negligence of the defendant truck driver in entering the intersection from a servient highway in front of the plaintiff's oncoming car without complying with statutory requirements. We conclude also that while the evidence may justify the inference that the plaintiff's driver was contributorily negligent, nevertheless we think it sufficient to support the opposite inference. This makes it a case for the jury as against the defendant Billy Ray Walker, driver of the truck. Nonsuit on the ground of contributory negligence may be allowed when, and only when, no other inference is reasonably deducible from the plaintiff's evidence. *Fowler v. Atlantic Co.*, 234 N.C. 542, 67 S.E. 2d 496.

Ownership of the truck is admitted by the defendant Glenn Walker in his answer. This suffices, by virtue of G.S. 20-71.1, to carry the case to the jury against him under the doctrine of *respondeat superior*. *Hartley v. Smith*, 239 N.C. 170, 79 S.E. 2d 767.

Since the question raised by the plaintiff's remaining assignment of error may not arise on retrial, we refrain from discussing it.

The judgment below is

Reversed.

HIGGINS, J., took no part in the consideration or decision of this case.