LUCY SMITH v. E. D. BUIE.

(Filed 14 December, 1955.)

1. **Negligence § 19c—**

Nonsuit on the ground of contributory negligence at the close of plaintiff's evidence is proper only when plaintiff's own evidence, taken in the light most favorable to her, establishes this defense so clearly that no other reasonable inference or conclusion can be drawn therefrom.

2. **Automobiles § 17—**

In the absence of anything which gives, or in the exercise of due care should give, notice to the contrary, a motorist traveling along a dominant highway may assume, and act upon the assumption, even to the last moment, that the operator of a vehicle along the servient highway will stop before entering the intersection with the dominant highway.

3. **Same: Automobiles § 42g—Evidence held not to show contributory negligence as a matter of law on part of plaintiff in failing to see that motorist along servient highway would not stop.**

Plaintiff testified that she saw defendant's vehicle approaching along the servient highway, traveling at a speed of 30 to 35 miles per hour, when defendant's car was approximately a half block away and farther from the intersection than plaintiff's car, and that plaintiff did not thereafter watch for defendant's car or see it until after she had entered the intersection. The evidence further tended to show that defendant could have stopped his vehicle, and there was no evidence as to what extent plaintiff could have seen defendant's car as it proceeded toward the intersection or that defendant continued into the intersection at the same speed. *Held:* The evidence does not compel the conclusion that plaintiff saw, or by the exercise of reasonable care should have seen, that defendant was not going to stop at a time when plaintiff's position was such that she could have avoided the collision, and therefore nonsuit on the ground of contributory negligence is error.

4. **Automobiles § 17: Municipal Corporations § 25b—**

Testimony to the effect that at an intersection within a municipality, one street was a through street and the other a cross street on which a stop sign

was erected, nothing else appearing, is sufficient to warrant a finding that the municipal authorities had caused the stop sign to be placed on the cross street as authorized by statute.   G.S. 20-158 (a).

DENNY, J., dissents.

PARKER, J., dissenting.

APPEAL by plaintiff from *Sharp, Special Judge,* March, 1955, Civil Term of HOKE.

Civil action to recover damages to person and property growing out of a collision that occurred 1 December, 1953, about noon, within the intersection of Magnolia and Edinborough Streets in Raeford, North Carolina, between a Ford car, operated by plaintiff, and a Buick car, owned and operated by defendant.

The appeal is from a judgment of involuntary nonsuit, entered at the close of plaintiff's evidence.

Magnolia Street runs north-south.   Edinborough Street runs east-west.   Plaintiff was driving north on Magnolia Street.   Defendant was driving west on Edinborough Street.

Plaintiff offered evidence tending to show the following:

1. Magnolia Street was a *through* street.   Edinborough Street was a *cross* street.   There was a stop sign at the intersection.   It was on Edinborough Street, to the right of a driver going west thereon towards the intersection.

2. The portion of Edinborough Street east of Magnolia Street was wider than the portion thereof west of Magnolia Street.   A person driving west on Edinborough Street had to bear *to the left* to cross said intersection and enter the portion of Edinborough Street to the west of Magnolia Street.

3. In traveling north on Magnolia Street, plaintiff stopped some 225 feet south of said intersection, at a railroad crossing.   She then proceeded north, at a speed of approximately 20 miles per hour.   Approximately half way between the place where she had stopped and said intersection, she observed defendant's car.   She estimated its speed at 30 to 35 miles per hour.   Defendant's car was then farther from said intersection than plaintiff's car, defendant's car being approximately "half the length of the block" from said intersection.

4. Plaintiff did not notice or watch for defendant's car as it proceeded towards the intersection.   She drove on into said intersection, assuming defendant would stop in obedience to the stop sign.   Plaintiff testified: "After I had entered the intersection I observed the car was not stopping at the stop sign, and the next thing I knew I was struck from the right side of my car" by defendant's car.

5. Defendant entered said intersection without stopping. In response to an inquiry by an investigating officer, defendant stated that "He saw her—that he had time to stop and could have stopped, and he had his mind on something so strong that he wasn't thinking what he was doing."

6. The left front of defendant's car was damaged. The right front of plaintiff's car was damaged.

Evidence as to the extent of personal injuries and property damages, irrelevant on this appeal, is omitted.

Upon appeal, plaintiff assigns as error the entry of judgment of involuntary nonsuit.

*H. D. Harrison, Jr., for plaintiff, appellant.*
*Nance & Barrington for defendant, appellee.*

Bobbitt, J. Does plaintiff's evidence, taken in the light most favorable to her, so clearly establish contributory negligence that no other reasonable inference or conclusion can be drawn therefrom? See *Horton v. Peterson*, 238 N.C. 446, 78 S.E. 2d 181. In his brief, defendant poses this question as determinative.

The relative rights and duties of motorists approaching an intersection, one on a dominant street or highway and the other on a servient street or highway, are fully explained by *Barnhill, C. J., Marshburn v. Patterson*, 241 N.C. 441, 85 S.E. 2d 683. In that case, upon which defendant places chief reliance, it was held that the issue as to whether the driver on the dominant street was contributorily negligent, was properly submitted for jury determination. There the driver on the dominant street testified that he did not look either to the right or to the left as he approached the intersection. Even so, he was chargeable with notice of what he would have seen had he exercised due care to keep a proper lookout. There was evidence that the driver on the servient street "was going unusually fast . . . was going too fast to stop . . . The speed was from 50 to 60 m.p.h." On the other hand, there was evidence that the car on the servient street was traveling at a speed of only 25 to 30 miles per hour. Upon this conflicting evidence, whether the driver on the dominant street was put on notice that the driver on the servient street would not yield the right of way was held an issue for jury determination.

"It is established by our decisions that where a highway is designated as a main traveled or dominant highway by the erection of stop signs at the entrances thereto from intersecting servient highways, as prescribed by G.S. 20-158 (a), the operator of a motor vehicle traveling upon such main traveled or dominant highway and approaching an

intersecting servient highway is under no duty to anticipate that the operator of a motor vehicle approaching on an intersecting servient highway will fail to stop as required by the statute, and, in the absence of anything which gives, or in the exercise of due care should give, notice to the contrary, the driver on the dominant highway is entitled to assume and to act upon the assumption, even to the last moment, that the operator of the vehicle on the servient highway will act in obedience to the statute and stop before entering the dominant highway. *Hawes v. Refining Co.*, 236 N.C. 643, 74 S.E. 2d 17; *Loving v. Whitton*, 241 N.C. 273, 84 S.E. 2d 919." *Johnson, J.,* in *Caughron v. Walker, ante,* 153, 90 S.E. 2d 305.

Here plaintiff observed defendant's car on Edinborough Street, going west, at a speed of 30 to 35 miles per hour. It was then approximately "half the length of the block" from the intersection. She did not observe it again until she entered the intersection. She then observed that defendant's car was not stopping at the stop sign.

To what extent, if any, plaintiff could have seen defendant's car as it proceeded from its position when plaintiff first observed it towards the intersection does not appear. Nor does it appear that defendant continued at the same speed as he approached the stop sign and intersection.

There is no evidence that defendant could not have stopped in obedience to the stop sign. Indeed, defendant's own statement is to the effect that he could have done so. If this is accepted, it can hardly be said that plaintiff was put on notice that defendant would not stop when by his own statement he could have done so. The evidence of plaintiff, upon which defendant places great stress, is simply to the effect that plaintiff did not watch for or notice defendant's car from the time she first observed it until she saw it overrunning the stop sign and entering the intersection.

Mindful that the burden of proof as to contributory negligence is on defendant, the evidence here, in our opinion, does not compel the conclusion that plaintiff saw, or by the exercise of reasonable care should have seen, that defendant was not going to stop at the stop sign at a time when her position was such that she could have avoided the collision.

Defendant contends that under G.S. 20-155 (a) he had the right of way, since he approached the intersection from plaintiff's right. The basis of this contention is that there is neither allegation nor proof of an ordinance of the Town of Raeford relating to the erection of a stop sign against traffic going west on Edinborough Street.

Under G.S. 20-169, local authorities, *by ordinance,* may provide for the regulation of traffic within a municipality by means of automatic

signal control devices. Before legal rights may be predicated thereon, such an ordinance must be alleged and established by proper evidence. *Stewart v. Cab Co.,* 225 N.C. 654, 36 S.E. 2d 256; *Cox v. Freight Lines,* 236 N.C. 72, 72 S.E. 2d 25. The State statute, G.S. 20-158 (c), relates to such devices when installed outside of the corporate limits of a municipality.

Here we are dealing with a *stop sign,* not an automatic signal control device. The State statute applicable to *stop signs,* G.S. 20-158 (a), provides, in part, that "local authorities, with reference to highways under their jurisdiction, are hereby authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, . . ." Such action by the local authorities makes applicable the provisions of this State statute.

Where two streets of a municipality intersect, testimony identifying one as the through street and the other as the cross street, on which there is a stop sign to the right of a driver thereon approaching the intersection, connotes that the streets have been so designated and the sign erected by action of the municipal authorities. Nothing else appearing, the evidence here was sufficient to warrant a finding that the municipal authorities had designated Magnolia Street as a through street and had caused the stop sign to be placed on Edinborough Street at its entrance to Magnolia Street. See *Anderson v. Office Supplies,* 234 N.C. 142, 66 S.E. 2d 677; *Johnson v. Bell,* 234 N.C. 522, 67 S.E. 2d 658.

Admittedly, plaintiff's son, Eugene P. Smith, is the owner of the Ford car plaintiff was driving. Any cause of action to recover on account of damage thereto vests in him, not in plaintiff. Yet Eugene P. Smith is not a party to this action.

Under the evidence presented, we reach the conclusion that the issues of negligence and of contributory negligence were for jury determination. Hence, the judgment of involuntary nonsuit is

Reversed.

DENNY, J., dissents.

PARKER, J., dissenting: The plaintiff alleged in her complaint that, as she approached the intersection of Edinborough and Magnolia Streets, she "observed defendant's vehicle travelling west on Edinborough Street at a high rate of speed." On direct examination she testified that, when she first saw defendant's car, it was going at a rapid rate of speed; that she expected it to stop at the stop sign; that when she entered the intersection she saw it was not stopping at the stop sign.

On cross-examination she testified that, when she saw defendant's car coming at a high rate of speed, the car was a city block or less from the intersection, and she would say it was going 30 to 35 miles an hour: that she was closer to the intersection than the defendant was.

This is a part of plaintiff's testimony on cross-examination:

"Q   You saw him coming at a high rate of speed?

A   Yes, sir.

Q   What did you do when you saw a car approaching the same intersection at a high rate of speed?

A   I naturally expected the car to stop and, knowing there was a stop sign, I didn't see any sense in keeping on looking.  I continued on my way.  I did slow down but I did not stop.  My speed was within 15 to 20 miles."

This is another part of plaintiff's testimony on cross-examination:

"The car I saw coming was going at a rapid rate of speed.

Q   By rapid do you mean around 35 to 40 miles an hour?

A   It was rapid; I don't know.  There was a stop sign and I expected him to stop.

Q   Answer my question!  Would you say it was going as fast as 35 to 40 miles per hour?

A   I would say 30 to 35.

Q   As you went on towards the intersection you kept watching it?

A   I noticed the car; but I thought he was stopping, and knowing the stop signs were there, I didn't see any sense of keeping on watching the car.

Q   You mean, after having seen the car approaching at a high rate of speed, you didn't see any sense in looking to see if it stopped or not?

A   What good would it have done?

Q   Is that what you said, you didn't see any sense in noticing that car any more, that is right; that is what you said, isn't it?

A   Do I have to answer that question right on?

COURT:   Just answer counsel's questions.

Q   That is what you said, isn't it?

A   That is right.

Q   And you drove on into that intersection knowing that it was an intersection, didn't you?

A   It was a cross street.

Q   And you drove on in there knowing there was a car approaching from your right at a rapid rate of speed, didn't you; that is right isn't it?

A   Yes.

Q   And you and that car got into that intersection about the same time, didn't you?

A   We met there."

There is plenary evidence tending to show that the defendant is guilty of actionable negligence.

However, the plaintiff, who was the motorist on the dominant highway, had actual knowledge that the defendant, who was the motorist on the servient highway, was approaching this intersection a city block or less away at a speed of 30 to 35 miles an hour.  Such knowledge on her part, in my opinion, was sufficient to put a person of ordinary prudence on notice that the defendant was either unaware of her presence, or did not intend to, or could not stop in time to yield the right of way to the plaintiff on the dominant highway.  Under such circumstances plaintiff had no right to assume that the defendant would stop at the stop sign, and yield her the right-of-way.  *Marshburn v. Patterson,* 241 N.C. 441, 85 S.E. 2d 683; *Loving v. Whitton,* 241 N.C. 273, 84 S.E. 2d 919; *Guthrie v. Gocking,* 214 N.C. 513, 199 S.E. 707.

Yet, the plaintiff with such actual knowledge of the defendant's speed within a city block or less of the intersection gave this testimony as to her actions: "I noticed the car; but I thought he was stopping, and knowing the stop signs were there, I didn't see any sense of keeping on watching the car."  When the plaintiff saw the defendant's car, she was far enough away from the intersection at her speed to stop.  In my opinion, the plaintiff's evidence establishes contributory negligence so clearly that no other conclusion may be reasonably drawn therefrom, and the defendant is entitled to have his judgment of nonsuit sustained. *Sheldon v. Childers,* 240 N.C. 449, 82 S.E. 2d 396; *Morrisette v. Boone Co.,* 235 N.C. 162, 69 S.E. 2d 239.

*Marshburn v. Patterson, supra,* is distinguishable.  In that case Marshburn, without looking to the right or to the left, drove into the intersection.  He did not see the Eddleman vehicle prior to the collision.  The Court said: "Thus the evidence is conflicting as to the condition existing at the time, *particularly in respect to whether the operator of the Marshburn automobile was put on notice that Patterson would not yield the right-of-way.*  Hence, it was a question for the jury." (Italics mine.)   Patterson was driving the Eddleman automobile.

The plaintiff has proved herself out of court.  She knowingly "took a chance and lost."  *Stamey v. R. R.,* 208 N.C. 668, 182 S.E. 130.

I vote to affirm.