## SAMPSON JACKSON v. ZELZAH McCOURY

(Filed 10 January, 1958.)

**1. Appeal and Error § 49—**

In an action within the purview of the Small Claims Act, where neither party aptly demands a jury trial, the findings of fact made by the presiding judge have the force and effect of a jury verdict and are binding on appeal if supported by competent evidence.

**2. Automobiles § 17—**

A stipulation of the parties that there was a stop sign erected on the east side of a street before its intersection with another street is sufficient to raise the inference that such sign was erected pursuant to competent authority. G.S. 20-158(a).

**3. Same—**

The failure of a driver along a servient street or highway to stop in obedience to a stop sign before entering an intersection with a dominant street or highway is not negligence or contributory negligence *per se,* but is only evidence thereof to be considered with other facts in the case upon the appropriate issue.

JACKSON *v.* McCoury.

4. Same—

The driver of a vehicle along a servient street or highway, who is required to stop by sign duly erected before entering an intersection with a dominant street or highway, should not only stop but should not proceed into the intersection until, in the exercise of due care, he can ascertain that he can do so with reasonable assurance of safety.

5. Automobiles § 41g—

Plaintiff's evidence to the effect that defendant, driving along a servient street, failed to stop in obedience to a stop sign before entering the intersection with the dominant street and that his car was struck on its right side by the vehicle driven by plaintiff along the dominant street and entering the intersection from defendant's right, renders the issue of defendant's negligence a jury question, and supports an affirmative conclusion thereon in a trial by the court where right to trial by jury is not preserved.

6. Automobiles § 17—

The driver of a vehicle along a dominant street or highway is not under duty to anticipate that the operator of a vehicle approaching the intersection along the servient highway will fail to stop as required by statute, but may assume, in the absence of anything which gives or should give notice to the contrary, even to the last moment, that the operator of a vehicle traveling along the servient street or highway will stop before entering the intersection.

7. Same—

Even though the driver of the vehicle along a dominant street or highway has the right to assume that motorists approaching the intersection along the servient highway will yield him the right of way, the driver along the dominant highway is nevertheless required to exercise due care, to keep a reasonably careful lookout, to drive at a speed that is no greater than is reasonable and prudent under conditions then existing, to keep his vehicle under control, and to take such care as would be exercised by an ordinarily prudent person to avoid collision when danger of a collision is discovered or should be discovered in the exercise of ordinary care.

8. Automobiles § 42g—

Evidence tending to show that plaintiff was driving along the dominant street, that he did not see defendant's vehicle, which was approaching the intersection along the servient street from plaintiff's left, until plaintiff was some 45 to 50 feet away from the intersection, that defendant's vehicle was then in the street, and that plaintiff applied his brakes and skidded his car some 34 feet before the left front of plaintiff's car struck the right side of defendant's car, *is held* to raise the question of plaintiff's contributory negligence for the determination of the jury, but not to establish contributory negligence as a matter of law.

9. Automobiles § 13—

The mere skidding of a motor vehicle does not imply negligence.

APPEAL by defendant from *Phillips, J.*, at June 1957 Assigned Civil Term, of WAKE.

JACKSON *v.* McCOURY.

Civil action under Small Claims Act for recovery of property damage allegedly caused by negligence of defendant, heard by the judge presiding without a jury.

These facts appear uncontroverted: This action arose out of an automobile collision between plaintiff's 1955 Ford and defendant's 1954 Pontiac, at intersection of Martin and Harrington Streets, on Saturday, 7 April, 1956, about 9:40 A. M. Martin Street runs east and west, and Harrington Street runs north and south. Plaintiff was operating his Ford west on his right side of Martin Street, and defendant was operating his Pontiac north on his right side of Harrington Street. As result of the collision both automobiles were damaged,—plaintiff's Ford in the front, and defendant's Pontiac on its right side.

Plaintiff alleges in substance that his automobile was damaged as a proximate result of negligence of defendant in driving his said automobile upon one of the main streets of the city of Raleigh: (a) Recklessly in violation of G.S. 20-140; (b) without adequate brakes in good working order, all in violation of G.S. 20-124; and (c) negligently failing to stop before entering the main-traveled thoroughfare, all in violation of G.S. 20-158; and (d) entered into an intersection of two streets in said city and unlawfully failed to yield the right of way to traffic already upon said intersecting street, all in violation of G.S. 20-155, to the damage of plaintiff in amounts alleged.

On the other hand, defendant, answering, denies in material aspect the allegations of the complaint as to negligence, and as a further answer and defense, and as a counterclaim against plaintiff defendant avers that at the time and place in question his automobile was damaged as a direct and proximate result of the carelessness and negligence of the plaintiff in failing (a) to keep and observe a proper lookout, (b) to give warning by horn or otherwise of his approach to the intersection, (c) to yield the right of way to defendant's automobile which entered the intersection first, (d) to keep his automobile under control, and (e) to decrease the speed of his automobile as he approached the intersection, so as to avoid colliding with the automobile of defendant which was already in and more than half way across the intersection, and in that he drove his automobile at a dangerous and excessive rate of speed under the circumstances and conditions then existing; and that by his own negligence plaintiff caused or helped to cause such damage to his automobile as he may have sustained; and defendant pleads such negligence on the part of plaintiff in bar of any recovery herein.

Upon the trial in Superior Court, police officer L. M. Smith, of the city of Raleigh, who investigated the accident, and intro-

duced by plaintiff, testified in pertinent part: "* * * When I got to the scene the nose of the Pontiac was right about even with the north curb line of Martin Street, and the nose of the 1955 Ford came into the intersection and curved slightly northwest. There is a stop sign on Harrington Street 15 feet south of the intersection. A building at the southeast corner of the intersection is 12 feet from the street, and the stop sign is 4 feet behind the building. The stop sign is 16 feet from the corner. Skid marks of the Ford were 34 feet long. There were no skid marks from the Pontiac. Each of the these streets is 42 feet wide. The accident occurred in the business area. The speed limit in this particular section * * * was 35 miles per hour * * * The defendant was present when the plaintiff made a statement that he didn't think the defendant stopped at the stop sign."

Then on cross-examination the witness continued: "* * * The Pontiac was * * * on its right-hand side of Harrington Street * * * on which it was traveling. The nose of the car was headed kind of in a northwesterly direction, pushed slightly to the left, and the front of the Ford was headed to its right slightly * * * It was on its right-hand side of Martin Street * * * The front part of the Ford collided with the right side of the Pontiac * * * it hit right in the door post. The left front fender and grille of the Ford seemed to hit the Pontiac first * * * The Pontiac had passed considerable over half way across the street. The point of impact was 12 feet from the north curb of Martin Street. That means it had gone 30 feet into the intersection. The Ford had gone only 16 feet from the east curb of Harrington Street into the intersection."

Then on re-direct and re-cross-examination, the witness concluded his testimony as follows: "A car coming into the intersection on Harrington Street would have to get the nose of the car practically even with the curb line before it could see up Martin Street. If the defendant stopped at the stop sign, he could not see along Martin Street,—he would have to stop even with the line of the street * * * In a Pontiac automobile, from where the driver sits to the front bumper of the car is approximately 8 or 10 feet. The sidewalk on the south side of Martin Street is 10 or 12 feet."

And the plaintiff Sampson Jackson, as witness in behalf of himself, testified in pertinent part: "* * * As I approached the intersection I was traveling from 20 to 25 miles per hour * * * As I approached the intersection I looked both ways on Harrington Street and did not see any automobile coming. I was meeting a car or truck one * * * on my left. * * * That was as I was going into the intersection. The defendant was out in the

street the first time I saw him, and I applied my brakes. I would say half of the defendant's car was out in the street. I did not see the defendant stop his automobile. I would say he was going 15 or 20 miles per hour. It looked like he was picking up speed. I skidded my car 34 feet." And the witness continued: "When I saw the defendant's car, I would say I was about 45 to 50 feet from the intersection. I am familiar with this intersection and have been driving over it for years * * * Prior to the accident my car was in good shape. Brakes were in good working order * * * When the accident occurred the weather was clear and the pavement dry."

Then plaintiff continued: "* * * When I saw the defendant's car I put on brakes and stopped. I skidded 34 feet and that carried me into the intersection a little. I struck the defendant's car on its right-hand side. * * * The damage to my car was the front. The damage to the defendant's car was on the right side * * * I met the car going in an opposite direction just a little ways before I got to the intersection. I met the truck and then I was entering the intersection, and he was coming out. I met the car 26 or 36 feet from the intersection."

Then on re-direct examination plaintiff testified: "* * * The truck was coming east and had just cleared the intersection when I first saw the defendant's automobile. After the wreck my car was so I could not drive it. The whole repair bill was $498.99."

And the parties stipulated that there was a stop sign on the east side of S. Harrington Street 16 feet south of the intersection.

Here, plaintiff rested his case; and after reserving exception to the denial of motion for judgment as of nonsuit, defendant testified and offered the testimony of other witnesses tending to show that he stopped at the stop sign, and after stopping and looking both ways and seeing nothing but a truck that had passed he started across the intersection, and got almost over— when plaintiff's car hit his car on its right side about the post between the two doors and mashed in the side, and that when he first saw plaintiff's car "it was close, 10 or 12 feet, I imagine. I hadn't seen it before that time."

Defendant reserved exception to denial of motion for judgment as of nonsuit at close of all the evidence.

The trial judge answered the issues in favor of plaintiff, and did not answer the issues arising on defendant's counterclaim.

Defendant also excepts to finding of fact embodied in each of the issues answered by the court, and excepts to the judgment entered in accordance therewith, and appeals to Supreme Court and assigns error.

*Mordecai, Mills & Parker for Plaintiff Appellee.*
*Smith, Leach, Anderson & Dorsett for Defendant Appellant.*

WINBORNE, C.J.: The question involved on this appeal, as aptly stated in brief of defendant appellant, is "Whether the court erred in denying his motion for nonsuit made at close of plaintiff's evidence and renewed at the close of all the evidence, in finding the facts incorporated in the judgment, and in rendering the judgment."

In this connection it must be borne in mind that this action is based on what is denominated a small claim, defined and authorized by 1955 session of the General Assembly of North Carolina in an act entitled "An Act to Expedite the Adjudication of Small Claims in the Superior Court." Under this act, in pertinent part, a small claim is defined in Section 1, subsection (a) as "An action in which the relief demanded is a money judgment and the sum prayed for (exclusive of interests and costs) by the plaintiff, defendant, or other party does not exceed one thousand dollars."

It is declared in Section 3 of the act that in such action no jury trial shall be had unless a party thereto, in the first pleading filed by him, shall demand a jury trial. And it does not appear that in case in hand a jury trial was demanded by either party. Therefore findings of fact made by presiding judge, supported by competent evidence, have the force and effect of a jury verdict, and are binding on appeal.

And in connection with the question presented, it must be borne in mind that by virtue of the provisions of G.S. 20-158 (a) Martin Street is a through or dominant street and Harrington Street is subservient thereto. This statute, G.S. 20-158, prescribes that (a) The State Highway and Public Works Commission, with reference to State highways, and local authorities with reference to highways under their jurisdiction, are authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to full stop before entering or crossing such designated highway, and that whenever any such signs have been so erected, it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. And the same section of the statute declares that "No failure so to stop, however, shall be considered contributory negligence *per se* in any action for injury to person or property; but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether plaintiff in such action was guilty of contributory negligence." See *Sebastian v. Motor Lines,* 213 N.C. 770, 197 S.E. 539; *Johnson v. Bell,* 234 N.C. 522,

67 S.E. 2d 658; *Hawes v. Refining Co.*, 236 N.C. 643, 74 S.E. 2d 17; *Badders v. Lassiter*, 240 N.C. 413, 82 S.E. 2d 357, and cases cited. G.S. 20-158 (a).

Plaintiff alleges in his complaint that at the southeast intersection of Martin and Harrington Streets there is a duly erected stop sign requiring northbound traffic on Harrington Street to stop before entering and proceeding through the said intersection. And the parties stipulate that there was a stop sign on the east side of S. Harrington Street 16 feet south of said intersection. This is sufficient to raise the inference that such sign was erected pursuant to competent authority. *Johnson v. Bell, supra; Smith v. Buie,* 243 N.C. 209, 90 S.E. 2d 514. Compare *Bobbitt v. Haynes,* 231 N.C. 373, 57 S.E. 2d 361.

And regarding this statute it is held in *Sebastian v. Motor Lines, supra,* that "As a necessary corollary or as the rationale of the statute, where the party charged is a defendant in any such action the failure to stop is not to be considered negligence *per se,* but only evidence thereof to be considered with other facts in the case in determining whether the defendant in such action is guilty of negligence."

In like manner and for the same reason, the principle may be extended to anyone who violates the statute. See *Johnson v. Bell, supra,* and cases cited.

"The purpose of highway stop signs," as stated by this Court in opinion by *Devin, J.,* later *C. J.,* in *Matheny v. Motor Lines,* 233 N.C. 673, 65 S.E. 2d, 361, "is to enable the driver of a motor vehicle to have opportunity to observe the traffic conditions on the highways and to determine when in the exercise of due care he might enter upon the intersecting highway with reasonable assurance of safety to himself and others. * * * And the statute G.S. 20-154 also requires that before starting from a stopped position and moving into the line of traffic the driver shall first see that such movement can be made in safety."

And in the Matheny case the Court went on to say that "Since at the intersection described in the case at bar the driver of an automobile approaching the intersection from the north was required (G.S. 20-158) to bring his automobile to a complete stop, the right of way, or rather the right to move forward into the intersection would depend upon the presence and movement of vehicles on the highway which he intended to cross. The rule as to right of way prescribed by G.S. 20-155 applies to moving vehicles approaching an intersection at approximately the same time * * * When the driver has already brought his automobile to a complete stop, thereafter the duty would devolve upon him to exercise due care to observe approaching vehicles and to govern his conduct accordingly. One who is required to stop before en-

JACKSON v. McCOURY.

tering a highway should not proceed, with oncoming vehicles in view, until in the exercise of due care he can determine that he can do so with reasonable assurance of safety * * * Generally when the driver of an automobile is required to stop at an intersection he must yield the right of way to an automobile approaching on the intersecting highway * * * and unless the approaching automobile is far enough away to afford reasonable ground for the belief that he can cross in safety he must delay his progress until the other vehicle has passed." See also *Cooley v. Baker*, 231 N.C. 533, 58 S.E. 2d, 115; *S. v. Hill*, 233 N.C. 61, 62 S.E. 2d, 532; *Hawes v. Refining Co., supra; Badders v. Lassiter, supra.*

In the light of these principles, applied to the evidence in case in hand, whether defendant, under the circumstances, acted as a reasonably prudent person would have under similar circumstances, is properly a jury question, and the judge has resolved the issue in this respect in favor of plaintiff.

On the other hand defendant, appellant, contends and insists that upon his own evidence plaintiff is guilty of contributory negligence in the operation of his automobile at the time and place in question.

In this connection, the operator of an automobile, traveling upon a designated main traveled or through highway and approaching an intersecting highway, is under no duty to anticipate that the operator of an automobile approaching on such intersecting highway will fail to stop as required by the statute, and, in the absence of anything which gives or should give notice to the contrary, he will be entitled to assume and to act upon the assumption, even to the last moment, that the operator of the automobile on the intersecting highway will act in obedience to the statute, and stop before entering such designated highway. *Reeves v. Staley*, 220 N.C. 573, 18 S.E. 2d, 239; *Johnson v. Bell, supra; Hawes v. Refining Co., supra; Blalock v. Hart*, 239 N.C. 475, 80 S.E. 2d, 373.

However, as stated in *Blalock v. Hart, supra*, in opinion by *Johnson, J.*, "The driver on a favored highway protected by a statutory stop sign (G.S. 20-158) does not have the absolute right of way in the sense he is not bound to exercise care toward traffic approaching on an intersecting unfavored highway. It is his duty, notwithstanding his favored position, to observe ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty it is incumbent upon him in approaching and traversing such an intersection (1) to drive at a speed no greater than is reasonable and prudent under the conditions then existing, (2) to keep his motor vehicle under control, (3)

to keep a reasonably careful lookout, and (4) to take such action as an ordinarily prudent person would take in avoiding a collision with persons or vehicles upon the highway when, in the exercise of due care, danger of such collision is discovered or should have been discovered," citing *Hawes v. Refining Co., supra; Reeves v. Staley, supra.*

In the light of these principles, applied to case in hand, this Court holds that the evidence shown in the record is sufficient to take the case to the jury on the issue of contributory negligence of plaintiff, but is not sufficient to compel the inference of negligence on the part of plaintiff as one of the proximate causes of the collision and resultant damage to him. The mere skidding of a motor vehicle does not imply negligence. For recent declarations on the subject see *Wise v. Lodge, ante,* 250, and *Durham v. Trucking Co., ante,* 204. And the judge has found that plaintiff did not, by his own negligence, contribute to his damage as alleged in the answer, and such finding is binding on this appeal.

For reasons stated the judgment below is
Affirmed.