JOHN MAVROLAS v. EARL GREGORY AND VISSIE R. GREGORY.

(Filed 23 March, 1960.)

**Automobiles § 42g—**

Plaintiff's evidence, considered in the light most favorable to him, tending to show that before entering an intersection with a dominant street, he stopped at a point from which he could see along the dominant highway, and did not move into the intersection until he saw no traffic approaching, and that upon entering the intersection he saw defendant's vehicle some 150 feet away, approaching from his left at a high rate of speed along the dominant highway, that he then stopped his car and was hit by defendant's car, *is held* not to disclose contributory negligence as a matter of law.

APPEAL by plaintiff from *Mintz, J.*, at September 1959 Civil Term, of NEW HANOVER.

Civil action to recover for personal injury and property damages allegedly resulting from actionable negligence of defendants arising out of an automobile collision at the intersection of Eighth and Castle Streets in the city of Wilmington, North Carolina.

In their brief filed on this appeal defendants, appellees, concede, for the purposes of the appeal, that the testimony of plaintiff makes out a *prima facie* case of actionable negligence against the defendants. But they aver in their answer and upon trial contend that plaintiff was contributorily negligent in the operation of his automobile in bringing about his injury and damage; that Castle Street, approximately fifty feet wide, runs east and west and is a paved through street, and Eighth Street approximately thirty feet wide, runs north and south and is a subservient street, in said city of Wilmington, with 'Stop' signs duly erected at the northwest and southeast corners of Eighth and Castle Streets, requiring all traffic moving north and south on Eighth Street to come to a complete stop before entering or attempting to cross Castle Street. (It being stipulated and agreed that the stop signs referred to in the testimony were placed there by the proper ordinances of the city of Wilmington, controlling traffic on Eighth Street.)

And upon trial in Superior Court plaintiff, testifying in behalf of himself, gave this narrative of the incident in question: "* * * I came to the intersection of Eighth and Castle Streets and stopped because there was a Stop sign there. I came to a complete stop. Two cars passed in the opposite direction * * * east and west. After the two cars passed, I looked and there were no cars there and I started slowly into the intersection and when I went about 10 or 15 feet in the intersection I heard some noise and I saw the car coming so fast that I

stopped. When I saw the car it was about 150 feet from me and when
I saw it I stopped. It did not slow up or stop and while I was waiting
for him to pass he ran into me. He did not stop when he got in the
intersection, nor did he slacken his speed. In my opinion he was travel-
ing over 50 miles per hour. When he struck the front wheels of my
car it spun and threw me on the northwest sidewalk * * *.''

Then on cross-examination plaintiff continued: "* * * Eighth Street
intersects at right angles with Castle Street * * * I imagine Eighth
Street is 28 feet wide and Castle Street about 50 feet. There is a red
store building on the west side and on the northwest corner of the in-
tersection of Eighth and Castle Streets. The northwest corner is a
large store building that comes up to the sidewalk on Castle; and on
the left of Eighth Street there is a large two-story white house on the
northeast corner and that house is right jam up against the sidewalk
on Castle Street and almost to the sidewalk on Eighth Street. I don't
recall there were any cars parked on Eighth Street as I approached
Castle Street, right or left * * * My car was the only car there when
I came to the intersection * * * I stopped before I hit the Stop sign.
I stopped in front of the street. Yes, the Stop sign is 15 or 20 feet
north of the northern line of this street. I went to the sign * * * I said
while I was stopped two cars came by— one east and the other west,
and I stayed right there. When it was clear, I looked both sides again
and got out into the street * * * I heard a noise from a car running
fast * * * I was in low gear, going from the standstill * * * at the time
I saw the car it was about 150 feet away; that is, I don't know exact-
ly if it is half a city block. You asked me if it is not a fact that when
I saw the other car it was entering the intersection just as I pulled
out. I answer you 'Yes, sir, I stopped.' You asked me if just as I pull-
ed my Jeep out I heard this car right at the intersection, and I answer-
ed 'The first time I seen it, yes, sir.' "

And plaintiff upon recall continued: "I testified yesterday that I
stopped at the Stop sign at Castle Street. At that point I could see to
my left down Castle Street. Castle Street East, to my left, is level for
several blocks and I see there were no cars parked to my left along
the left side of Castle Street. After I stopped I pulled into the inter-
section and I heard the noise and looked and saw Mr. Gregory's car.
I said the car was about 100 feet away and I said that I had then
stopped. Castle Street there is a little hill and you can't see all the
way down. Yes, I can see all the way of the block. After I looked both
sides I got in the intersection and I did say I stopped, and the car was
100 feet away. In answer to your question— 'Why didn't you go on
across the intersection?'— I say, I can't go across the intersection be-

cause he was going so fast. I didn't want him to hit me in the center. The accident happened in the middle of Castle Street. My car was 10 or 15 feet inside the intersection when it was hit. I did not go back and look at the debris in the street after the accident. I saw the policeman look at it. I heard him testify it was about two feet from the center line of Castle Street. I heard the policeman say that yesterday. The policeman looked in the street, yes, sir. * * * * I did not try to back up or go through the intersection. I did say that when I first saw the car it was 150 feet away and I didn't back up or go forward to get out of the street. * * * 'Q. Is it not a fact that this car was coming into this intersection when you first saw it and you tried to stop, and your car was hit when you stopped? A. When I saw his car? Yes, sir, I was in the intersection—when I saw his car, I stopped. Q. Was not Mr. Gregory's car right there going into the intersection, on top of you, when you first saw it? A. Yes, sir.' "

Then C. E. Merritt, a member of the Wilmington Police Force, as witness for plaintiff testified in pertinent part, substantially as follows: "* * * On the 19th of March, 1958 * * * about 2 o'clock in the afternoon, I investigated a collision at the intersection of Eighth and Castle Streets." The witness then testified in detail in substantial accord with the narrative given by plaintiff as to the happening of the event. And then the witness continued: "I questioned Mr. Gregory, and he stated * * * Mr. Mavrolas didn't stop, or he didn't see him stop * * *."

Then the witness continued: "* * * from the dirt and debris, I found this accident happened entirely in the westbound traffic lane on Castle Street. It was on the right of the center line of the intersection; the center line of Eighth Street to the north of the center line of Castle Street. It was nearer the center line of Eighth Street than the center line of Castle * * * There is a Stop sign just north of the northern line of Castle Street and one on the southeast corner. Castle Street has been denominated as a through street."

Plaintiff, being recalled, testified: "I testified yesterday that I stopped at the Stop sign at Castle Street. At that point I could see to my left down Castle Street. Castle Street east to my left is level for several blocks and I see there were no cars parked to my left along the left side of Castle Street."

Then plaintiff, the witness, summarized in substantial accord testimony theretofore given by him.

When plaintiff rested his case  motion of defendants for judgment as of nonsuit was allowed, to which plaintiff excepts and gives notice of appeal and appeals to Supreme Court, and assigns error.

*Aaron Goldberg for plaintiff, appellant.*
*Poisson, Campbell & Marshall for defendants, appellees.*

WINBORNE, C. J.   Much has been written on the law pertaining to the subject of this action. *Hawes v. Refining Co.,* 236 N.C. 643, 74 S.E. 2d 17; *Matheny v. Coach Co.,* 233 N.C. 673, 65 S.E. 2d 361; *Batchelor v. Black,* 232 N.C. 314, 59 S.E. 2d 817; and on petition to rehear 232 N.C. 745, 61 S.E. 2d 894; *Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357; *Jackson v. McCoury,* 247 N.C. 502, 101 S.E. 2d 377 and others.

But conceding, as is done for the purpose of this appeal, that the evidence taken in the light most favorable to plaintiff makes out a *prima facie* case of actionable negligence against the defendants, the pivotal question is whether the evidence shown in the record of case on appeal, taken in the light most favorable to plaintiff, and giving to him the benefit of every reasonable intendment and inference to be drawn therefrom, tested by pertinent statutes of this State and decisions of this Court, is so clear in meaning as to sustain the defendants' contention that plaintiff was contributorily negligent as a matter of law in the operation of his motor vehicle at and in the intersection, and that such negligence was a proximate cause of the collision.

The Court is constrained to hold that the evidence presents a case for the jury on the issue of contributory negligence. Hence there is error in the judgment as of nonsuit. Cases relied upon by appellee are distinguishable in factual situation from those in the case in hand.

Therefore since in the light of this holding there must be a new trial, the Court refrains from a discussion of the evidence.

Reversed.